OPINION
On July 13, 1999, Elite Acquisition Corp., L.L.C. ("Elite Acquisition") filed a complaint in the Franklin County Court of Common Pleas against Nsystems, L.L.C. ("Nsystems"), Lozier Labs, Inc. ("Lozier Labs"), Brubaker Consulting Services, Inc., Donald A. Lozier and C. Todd Brubaker. On April 1, 1999, Elite Acquisition acquired essentially all the assets of Elite Software Services Corporation ("Elite") and assumed substantially all of Elite's contracts, including a subcontractor agreement between Elite and Lozier Labs. Elite had been in the business of providing computer-related support services to businesses and government. Elite had multi-year contracts with the then Ohio Department of Human Services ("ODHS"), and Elite would supply individuals to perform computer consulting services for ODHS.
On February 12, 1998, Elite entered into a subcontractor agreement ("agreement") with Lozier Labs. Mr. Lozier was the president of Lozier Labs and had worked as a computer consultant. Pursuant to the agreement, Lozier Labs would perform computer consulting services on behalf of Elite under the contracts with ODHS. The agreement contained non-competition clauses.
On or about March 31, 1999, Mr. Lozier and Mr. Brubaker formed Nsystems, a computer consulting business. Nsystems bid on and obtained contracts with ODHS. As indicated above, on April 1, 1999 Elite Acquisition acquired the assets of Elite, including the agreement with Lozier Labs.
The complaint set forth claims for relief of breach of contract and tortious and/or intentional interference with contractual/business relationships. The complaint also set forth a claim for injunctive relief to enjoin the defendants from using Elite Acquisition's confidential information and trade secrets. Under its breach of contract claim, Elite Acquisition averred that Mr. Lozier and Lozier Labs had breached the non-competition and confidential information clauses of the agreement. The complaint requested compensatory and punitive damages, an injunction and a declaration that the defendants' conduct was wrongful.
The defendants filed an answer, and Mr. Lozier filed a counterclaim which requested a declaration that he was not a party to the agreement in his individual capacity. In addition, the defendants filed a third-party complaint against the former Elite and its former president, Delden J. Fane.
On April 17, 2000, the defendants filed a motion for summary judgment. The defendants' motion requested summary judgment on the basis that the agreement's prohibition against competition had not yet accrued. The defendants contended that the non-competition clauses only went into effect once the agreement was terminated. At the time of the motion for summary judgment, the agreement was still in effect. The defendants also requested the trial court declare that Nsystems, Mr. Lozier, Brubaker Consulting Services, Inc. and Mr. Brubaker were not parties to the agreement and that Mr. Lozier was not liable for breach of contract as he was not personally liable under the agreement.
Elite Acquisition filed a memorandum contra arguing that paragraph 9(a) of the agreement prohibited competition with its customers during the term of the agreement and that all the defendants were liable for tortious interference with contract, regardless of whether they were parties to the agreement. The defendants replied, asserting that the existing non-competition clauses were being complied with.
On July 10, 2000, the trial court rendered a decision granting the defendants' motion for summary judgment. The trial court concluded that the addendum to the agreement, which was executed simultaneously with the agreement, was unambiguous and eliminated paragraph 9(a) of the agreement. Paragraph 9(a) of the agreement prohibited competition during the term of the agreement. Paragraphs 9(b), (c) and (d) prohibited competition for twenty-four months after termination of the agreement. Accordingly, the trial court concluded there was no present breach of the agreement. The trial court also noted that the defendants' contentions with regard to Nsystems, Brubaker Consulting Services, Inc. and Mr. Brubaker were unfounded as Elite Acquisition's claim against them was for tortious interference with contract, not for breach of contract.
On August 8, 2000, the trial court journalized an entry which stated that for the reasons set forth in the July 10, 2000 decision, the complaint was dismissed with prejudice. The judgment entry also stated that by agreement of the defendants, the third-party complaint and Mr. Lozier's counterclaim were dismissed without prejudice.
Elite Acquisition ("appellant") has appealed to this court, assigning the following errors for our consideration:
 1. The trial court erred in granting summary judgment for Appellees by limiting its interpretation of the non-competition clause to the four corners of the Subcontractor Agreement despite Appellee's [sic] admission that the writing was not a complete integration of the parties' agreement.
 2. The trial court erred in granting summary judgment for Appellees by excluding extrinsic evidence which clearly demonstrated the parties' intent that the non-competition clause prohibit competition both during the duration of the Subcontractor Agreement and after its termination.
 3. The trial court erred as a matter of law by finding that the Agreement was unambiguous because Appellees' interpretation of the non-competition clause constituted a manifest absurdity.
 4. The trial court erred in granting summary judgment for Appellees on Elite's breach of contract claim, tortious interference claim, and request for injunctive relief.
As they are interrelated, appellant's first, second and third assignments of error will be addressed together. Appellant contends, in essence, that the trial court erred in granting summary judgment in favor of the defendants (hereinafter collectively referred to as "appellees") as to breach of paragraph 9(a) of the agreement. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc.
(1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp.
(1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
The facts in the case at bar are largely undisputed. Rather, the parties assertions are based largely on contract interpretation principles. The construction of written contracts is a matter of law.McConnell v. Hunt Sports Ent. (1999), 132 Ohio App.3d 657, 675, citingAlexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. Appellant contends that the trial court erred in limiting its interpretation of the agreement to the four corners of the agreement, in excluding extrinsic evidence of the parties' intent and in failing to find that the agreement was ambiguous on the basis that appellees' interpretation would result in a manifest absurdity.
The purpose of contract construction is to effectuate the intent of the parties. Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, 132. The intent of the parties to a contract is presumed to reside in the language the parties chose to employ in the agreement. Id. at paragraph one of the syllabus. Extrinsic evidence will be considered by a court only when the language of the contract is unclear or ambiguous or when the circumstances surrounding the agreement invest the language of the contract with a special meaning. Shifrin v. Forest City Ent., Inc.
(1992), 64 Ohio St.3d 635, syllabus. The test for determining whether a contract is ambiguous is that common words will be given their ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the instrument.Id. at 638.
The provisions at issue in the case at bar are as follows:
9. Non-compete Covenants:
 (a) During the term of this Agreement, Contractor shall not be engaged or employed, directly or indirectly, in any data processing or related business activity except for Elite.
 (b) For a period of twenty-four months after termination of this Agreement with Elite for any reason, Contractor shall not directly or indirectly, * * * solicit or advise any Elite employee or any Sub-contractor who provides services to or through Elite to terminate his or her employment or relationship with Elite or to accept any employment (directly or indirectly) or other arrangement for providing services to any other person or organization.
 (c) For a period of twenty-four (24) months after the termination of this Agreement with Elite for any reason, Contractor shall not, directly or indirectly, * * * solicit or accept employment from any Elite
"Customer." * * *
 (d) For a period of twenty-four (24) months after the termination of this Agreement with Elite for any reason, Contractor shall not, directly or indirectly, * * * solicit or accept business from any Elite Customer or staff, perform services, advise, consult, bill or work, directly or indirectly, on any project for or on behalf of any Elite Customer.
* * *
Addendum 1
 For the purpose of this contract and for clarification Section 9). Non-compete Covenants; Paragraphs A, C and D will be modified to include the following statements:
 1. Paragraph A is stricken and does not apply for the duration of this contract. * * * [Emphasis sic.]
As to the meaning of paragraph 9(a) and the Addendum, which was executed simultaneously with the entire agreement, there is no ambiguity. It is clear from the plain and ordinary language of the Addendum that paragraph 9(a) was stricken from the agreement. The effect is that the Contractor was not prohibited from competing during the term of the agreement.
Appellant contends that a manifest absurdity results because under this interpretation, the Contractor was free to solicit appellant's customers during the term of the agreement but not after the agreement has been terminated. Appellant asserts this interpretation would permit a contract between the Contractor and appellant's customer that was made prior to termination of the agreement, even if such contract's term went beyond the term of the agreement. However, the Addendum is clear and unambiguous and where a contract is unambiguous, it does not become ambiguous by reason that in its operation it may work a hardship on one of the parties. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 55. See, also, Foster Wheeler Enviresponse, Inc. v.Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353,362. This is the language the parties chose to employ, and no manifest absurdity results from such provision.
Appellant further contends that the evidence shows the parties intended that the non-competition provisions applied both during and after the term of the agreement. However, we have already determined that the Addendum is unambiguous, and intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence.Aultman Hosp. Assn. at 53.
Because the Addendum is clear and unambiguous, we must give effect to its language. Such language states that paragraph 9(a) is stricken. Therefore, the Contractor could engage in competitive practices during the term of the agreement. Hence, the trial court did not err in concluding there was no breach in this regard, and summary judgment as to this issue was appropriate.
Accordingly, appellant's first, second and third assignments of error are overruled.
In its fourth assignment of error, appellant contends, in essence, that the trial court erroneously dismissed the entire complaint, including claims not addressed in appellees' motion for summary judgment and the trial court's decision on such motion. Appellant set forth several claims for relief. Appellant averred that Lozier Labs and Mr. Lozier breached the agreement in two ways: (1) in failing to adhere to the non-competition clauses; and (2) in failing to adhere to the confidential information provisions. In addition, appellant set forth a claim against the other appellees for tortious interference with contract and requested injunctive relief enjoining appellees from misusing confidential information and trade secrets and engaging in activities that violate the agreement.
Appellees' motion for summary judgment only addressed the breach of contract claim as to the non-competition covenants. In essence, the trial court's decision also addressed only this claim. However, the judgment entry dismissed the complaint in its entirety. As to the claim for tortious interference with contact, such claim requires that there be an intentional procurement of a contract's breach. See Fred Seigel Co.,L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, syllabus. Because the trial court correctly concluded that there has been no breach of the non-competition covenants, there is no correlating claim for tortious interference with such contract provision.
However, appellant also had a claim for breach of the agreement's provisions regarding confidential information and requested injunctive relief based on these provisions and in order to protect its trade secrets. Indeed, the agreement contained provisions entitled "Protection of Trade Secrets," "Ownership of Trade Secrets," and "Protection of Confidential Information." Appellant has averred that such provisions were breached, that appellees tortiously interfered with such provisions and that injunctive relief is warranted. Such claims were not addressed in appellees' motion for summary judgment or in the trial court's decision. Therefore, the trial court should not have dismissed the complaint in its entirety.
For this reason, appellant's fourth assignment of error is sustained, and the cause is remanded to the trial court on these remaining claims.
In summary, appellant's first, second and third assignments of error are overruled. Appellant's fourth assignment of error is sustained to the extent discussed above. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to such court to conduct further appropriate proceedings on the remaining claims.
 __________ TYACK, J.
LAZARUS and DESHLER, JJ., concur.