[Cite as *N.L. Constr. Corp. v. Ohio Dept. of Adm. Servs.*, 2012-Ohio-6328.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

N.L. CONSTRUCTION CORPORATION

    Plaintiff/Counter
Defendant/Third-Party Plaintiff

    v.

OHIO DEPARTMENT OF ADMINISTRATIVE SERVICES, et al.

    Defendants/Counter Plaintiffs

    and

KENDRICK EXCAVATING, INC., et al.

    Third-Party Defendants/Counter Plaintiffs

Case No. 2011-08318

Judge Alan C. Travis

DECISION

{¶ 1} On July 2, 2012, plaintiff/counter defendant/third-party plaintiff, N.L. Construction Corporation (NLC), filed a motion for partial summary judgment as to Count I and II of its complaint and as to the counterclaim of defendants/counter plaintiffs, Ohio Department of Administrative Services (ODAS) and Ohio Department of Transportation (ODOT). On July 24, 2012, ODAS and ODOT filed a memorandum in opposition.

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} NLC contracted with ODAS for the general trades scope of work at the ODOT Noble County Maintenance Facility project in Caldwell, Ohio.[1] The first phase of the project, which involved the design, manufacture and delivery of a pre-engineered metal building (PEMB), was to be completed by May 25, 2011. Phase II, which included demolition of the old building, was to be completed on or before October 12, 2011. The contract was executed on June 14, 2010, in the total amount of $2,611,368.

{¶ 5} According to the affidavit of Bruce Ratekin, an architect employed by the State Architect's Office, NLC failed to timely provide a PEMB that met project specifications and, accordingly, on October 14, 2010, ODOT notified NLC that it intended to exercise its termination rights pursuant to Article 12.3 (5-day notice). NLC responded with three correspondence, one each on October 19, 20, and 28, 2010. A meeting was subsequently held on November 3, 2010, to discuss the issue. As a result of the meeting, ODOT terminated NLC's contract for cause on November 5, 2010.

{¶ 6} NLC subsequently requested an extension of time to respond to the 5-day notice in a letter dated November 12, 2010. As a result of another meeting between the parties, which took place on November 17, 2010, ODOT agreed to rescind the

---

[1]ODAS and ODOT shall be referred to collectively as ODOT.

termination in return for NLC's promise to complete Phase I of the project by the end of July 2011. The agreement was memorialized on December 14, 2010, and therein, each of the parties reserved their respective claims and defenses.

{¶ 7} Subsequently, on February 23, 2011, ODOT sent a 5-day notice identifying four specific items of defective work. The parties met on March 11, 2011, to discuss the notice, at which time NLC was given a 7-day extension of time to complete the identified items. On March 15, 2011, NLC sent a second written response wherein it memorialized some of the discussions that had occurred and set forth its plan to address the remaining items identified in the February 23, 2011 notice. The state architect on the project reviewed NLC's March 15, 2011 correspondence and, after consulting with a scheduling specialist, he determined that NLC had not complied with the requirements of the 5-day notice and he recommended that ODOT terminate NLC's contract. (Affidavit of Lane Beogher.) ODOT issued a letter on March 23, 2011, terminating NLC's contract. As of that date, ODOT had paid NLC a total of $773,662.98.

{¶ 8} The crux of NLC's motion is that ODOT failed to follow the contractually mandated procedures when it terminated NLC's contract without first providing it with a 72-hour notice and without permitting NLC to cure any deficiencies in its performance.[2] In the alternative, NLC argues that even if the notice of termination was procedurally valid, ODOT has presented no evidence to support a termination "for cause" as that term is defined in the agreement. NLC seeks both a declaration that ODOT breached the contract and a judgment as to the issue of ODOT's liability. NLC further contends that, in the absence of a valid termination of its contract, ODOT cannot recover upon its

---

[2]ODOT did issue a 72-hour notice to NLC on January 24, 2011, which required NLC to "**provide an acceptable schedule that will meet the contractual requirements no later than February 1,**

counterclaim, as a matter of law. Accordingly, NLC seeks judgment in its favor on the counterclaim.

**{¶ 9}** Contract interpretation is a matter of law for the court. *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38. When interpreting a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. In determining the parties' intent, a court must read the contract as a whole and give effect, if possible, to every part of the contract. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361-362 (1997).

**{¶ 10}** The portion of the contract most relevant to this dispute is Article 5.3 of the "General Conditions," which provides in part as follows:

**{¶ 11}** "5.3.1 If the Contractor provides Defective Work or fails or neglects to perform the Work in accordance with the Construction Progress Schedule, the Contracting Authority may issue a written notice providing 3 days for the Contractor to begin to correct Defective Work or to recover schedule deficiencies as set forth in subparagraph 5.3.2 ('72-Hour Notice') to the Contractor.

**{¶ 12}** "* * *

**{¶ 13}** "5.3.2 If the Contractor fails or refuses to commence and continue to correct the Defective Work or recover the schedule deficiencies with diligence and promptness within three business days after receiving the 72-Hour Notice, the Contracting Authority may, without jeopardizing other remedies, take any action the

---

**2011**." (Original emphasis.) However, in the 5-day notice issued February 23, 2011, ODOT acknowledged that the revised baseline schedule was "signed by all Primary Contractors on 2-9-11."

Contracting Authority deems appropriate to correct the Defective Work or to recover the schedule deficiencies, including but not limited to exercising its termination rights under paragraph 12.3."

{¶ 14} A threshold question the court must answer is whether the contract required ODOT to issue a 72-hour notice to NLC before proceeding with the termination process described in Article 12.3. ODOT contends that the use of the permissive "may" in Article 5.3.1 means that such notice is discretionary. NLC argues that when Article 5.3.1 is read in conjunction with Article 5.3.2, it is clear that a 72-hour notice is a condition precedent to contract termination.[3]

{¶ 15} Article 12.3 of the General Conditions section of the parties' agreement provides in relevant part as follows:

{¶ 16} "12.3.1 The Contracting Authority may terminate all or a portion of the Contract if the Contractor:

{¶ 17} "12.3.1.1 Fails to prosecute the Work with the necessary force or in a timely manner;

{¶ 18} "12.3.1.2 Refuses to remedy Defective Work;

{¶ 19} "* * *

{¶ 20} "12.3.2 If the Contracting Authority intends to exercise its termination rights under this paragraph 12.3, the Contracting Authority shall issue not less than 5 days' written notice to the Contractor and the Contractor's Surety in accordance with O.R.C. Section 153.17 ('5-Day Notice').

{¶ 21} "12.3.3 If the Contractor fails to satisfy the requirements set forth in the 5-Day Notice within 15 days of receipt of the 5-Day Notice, the Contracting Authority may

---

[3]Although the parties disagree whether ODOT complied with the notice provisions of Article 12.3, the parties agree that a 5-day notice is mandatory whenever termination is "for cause" pursuant to Article 12.3.

declare the Contractor in default, terminate the Contract, and employ upon the Work the additional force to supply materials or either as appropriate * * *.”

{¶ 22} The court agrees that the decision whether to issue a 72-hour notice pursuant to Article 5.3 and the decision whether to commence termination proceedings pursuant to Article 12.3 are discretionary with the owner.  Indeed, both Article 5.3 and Article 12.3.1 contain the permissive “may.”  Thus, in proper context, the permissive “may” as used in both Article 5.3 and 12.3.1 means only that the owner may choose not to take a particular course of action described therein even though justifiable grounds exist.  The specific question for the court in this case, however, is whether the issuance of a 72-hour notice is required before ODOT may choose to terminate the contract. Based upon the plain language used in the agreement, the court finds that when Article 5.3.1 is read in conjunction with Article 5.3.2, the issuance of a 72-hour notice is a condition precedent to termination of the contract.

{¶ 23} In the opinion of the court, the contract contemplates a three step process in order for ODOT to perfect a termination “for cause.” The first step is to notify the contractor of the deficiencies in its performance and its right to cure (72-hour notice). Next, if the contractor fails or refuses to cure within 72 hours, the owner may either perform the work itself and back charge the contractor or it may resort to other contractual remedies including a termination for cause pursuant to Article 12.3.  If the owner chooses termination for cause, the owner must then issue a 5-day notice in accordance with Article 12.3.2.[4]  Finally, if the contractor fails to satisfy the requirements

---

[4]R.C. 153.17 requires notice to the contractor as follows: “(A) When in the opinion of the owner referred to section 153.01 of the Revised Code, the work under any contract made under any law of the state is neglected by the contractor or such work is not prosecuted with the diligence and force specified or intended in the contract, such owner may make requisition upon the contractor for such additional specific force or materials to be brought into the work under such contract or to remove improper materials from the grounds as in their judgment the contract and its faithful fulfillment requires.

of the 5-day notice within 15 days from receipt thereof, the owner may declare a default and terminate the contract.

{¶ 24} ODOT argues that such an interpretation of the contract violates R.C. 153.17 inasmuch as it provides the contractor with greater rights than those guaranteed by statute. While the court agrees that the contract at issue requires ODOT to provide greater pre-termination notice to NLC and a greater opportunity to cure than is mandated by R.C. 153.17, there is no indication from the four corners of the contract that such greater notice and opportunity was not intended by the parties. The court notes that R.C. 153.17 does not preclude ODOT from adding a 72-hour notice provision to a construction contract. Moreover, if ODOT had not intended the 72-hour notice to be the initial step in the termination process, ODOT could have made that clear in Article 5.3.1. For example, if ODOT had inserted the phrase "without jeopardizing its right of termination" either just ahead of or after the word "may" in Article 5.3.1, then the court would likely adopt ODOT's interpretation. Instead, such language appears in Article 5.3.2, which is operative only "[i]f the contractor fails or refuses to commence and continue the correct the Defective Work" within 72 hours. In other words, when Article 5.3 is read as a whole, ODOT's right to choose other contractual remedies, including termination under Article 12.3, arises only after the contractor fails to comply with the 72-hour notice.

{¶ 25} In light of the court's interpretation of the relevant contract language and given the undisputed fact that the appropriate 72-hour notice was not issued to NLC in this case, the only conclusion the court may reach upon the evidence is that ODOT

---

*"Not less than five days' notice in writing of such action shall be served upon the contractor or the contractor's agent in charge of the work. If the contractor fails to comply with such requisition within fifteen days, such owner with the written consent of the department of administrative services, may employ upon the work the additional force, or supply the special materials or such part of either as is considered proper, and may remove improper materials from the grounds."* (Emphasis added.)

breached Article 5.3.2 of the parties' agreement by terminating NLC's contract for cause. The failure of the mandatory 72-hour notice renders the termination invalid, as a matter of law.   Accordingly, NLC's motion for partial summary judgment shall be GRANTED both as to its claim for breach of contract and declaratory relief.

{¶ 26} Furthermore, with respect to the counterclaim, NLC argues that ODOT's premature termination of its contract bars ODOT from recovery upon its counterclaim. The court agrees.

{¶ 27} As a general rule, once there has been a material breach of the contract, the nonbreaching party is not required to fulfill the remaining terms of the contract, and the breaching party is not entitled to collect damages from the nonbreaching party. *See Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App.3d 163 (1st Dist.1990); *Kersh v. Montgomery Dev. Ctr.*, 35 Ohio App.3d 61, 62 (10th Dist.1987).   There can be no doubt that ODOT's premature termination of NLC's contract was a material breach inasmuch as NLC's removal from the project prevented it from curing the defective work and otherwise performing its work under the contract.   ODOT should not be permitted to benefit from its breach by seeking damages from NLC either for the cost of the remedial work or the completion of the project.   Accordingly, NLC is entitled to judgment on the counterclaim as a matter of law.   The question whether NLC's performance was defective will be an issue only as to NLC's damages.

{¶ 28} Inasmuch as judgment will be entered in favor of NLC on ODOT's counterclaim, the third-party complaint against third-party defendants/counter plaintiffs, Kendrick Excavating, Inc. and Smith Design & Construction Inc. (Smith), shall be dismissed.   However, Smith's counterclaim against NLC seeking compensation for work performed under its subcontract with NLC shall remain pending for adjudication.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

N.L. CONSTRUCTION CORPORATION

Plaintiff/Counter
Defendant/Third-Party Plaintiff

v.

OHIO DEPARTMENT OF ADMINISTRATIVE SERVICES, et al.

Defendants/Counter Plaintiffs

and

KENDRICK EXCAVATING, INC., et al.

Third-Party Defendants/Counter Plaintiffs

Case No. 2011-08318

Judge Alan C. Travis

JUDGMENT ENTRY

{¶ 29} In accordance with the decision filed concurrently herewith, plaintiff/counter defendant/third-party plaintiff's motion for partial summary judgment is GRANTED. Accordingly, judgment is rendered in favor of plaintiff/counter defendant/third-party plaintiff as to both the complaint, in an amount to be determined, and as to the counterclaim of defendants/counter plaintiffs. The third-party complaint is

hereby DISMISSED.  The counterclaim of third-party defendants/counter plaintiffs remains pending for adjudication.


_____
ALAN C. TRAVIS
Judge


cc:


Craig D. Barclay
William C. Becker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Ian H. Frank
Philip J. Truax
2500 Key Center
127 Public Square
Cleveland, Ohio 44114

James M. McHugh
220 Market Avenue, South, 8th Floor
Canton, Ohio 44702

Thomas L. Rosenberg
155 East Broad Street
National City Plaza, 12th Floor
Columbus, Ohio 43215

006
Filed August 30, 2012
To S.C. Reporter January 17, 2013