[Cite as *Jess Howard Electric Co. v. Ohio School Facilities Comm.*, 2013-Ohio-3642.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JESS HOWARD ELECTRIC CO.

Plaintiff

v.

OHIO SCHOOL FACILITIES COMMISSION

Defendant

Case No. 2010-12737

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} Plaintiff, Jess Howard Electric Company (JHE), brought this action against defendant, Ohio School Facilities Commission (OSFC), alleging breach of contract and seeking a declaratory judgment. The issues of liability and damages were not bifurcated and the case proceeded to trial on both issues.[1]

{¶ 2} In 2007, OSFC and the Columbus Public School District (the Owner) solicited bids for the construction of a new building known as the Livingston Avenue Elementary School (the project). The project called for multiple prime contractors. Harris Design Services acted as the architect on the project. Smoot Elford Resource (SER), an agent of the Owner, acted as the construction manager on the project. Pursuant to the contract's General Conditions (GC), SER was responsible for scheduling the project and coordinating the work of the contractors. (Joint Exhibit A4.) Michael Kray, III, was SER's project manager on the project from November 2007 until project completion. William Green, Jr., an employee of SER for approximately five

---

[1] The trial testimony of Robert Large, Jonathan Howard, and William Green, Jr., was presented by video deposition in accordance with the court's August 30, 2012 entry.

years, was SER's on-site supervisor until September 2008, and he reported to Kray. Tom Sisterhen was SER's project executive.  FH Martin was the general contractor. The project was a two-storied building comprised of four distinct areas, which were referred to as Areas A, B, C, and D throughout the construction schedules.

{¶ 3} JHE bid for and was awarded a contract with the Owner as the prime contractor for the electrical work on the project.  According to JHE, in its bid it estimated its labor for the project to be 822 man-days.  (Plaintiff's Exhibit 25.)  Jonathan Howard is JHE's president, but at the time of the bid, he was executive vice president and he reviewed the bid that was prepared by JHE's estimators.  Howard testified that he believed that the bid was reasonable.  The man-days component of the bid was based on the default schedule, which was the schedule presented to those bidding on the project in 2007.  JHE's total bid was $1,093,747.  (Plaintiff's Exhibit 33.)  On September 4, 2007, the parties signed the contract and the total price for the prime contract for electrical work was $1,113,747.  (Plaintiff's Exhibit 3.)

{¶ 4} As testified to by Green, when a project is bid, the contractors are given a default schedule.  Pursuant to GC 4.3, the default schedule governs the project until a construction schedule is issued.  After the contracts are awarded, a construction schedule is then developed by SER with the input of the contractors; this schedule was also referred to as the contractor's schedule.  Even after the construction schedule is developed, it continues to be adjusted throughout the project.

{¶ 5} At a November 7, 2007 Progress Meeting, Kray addressed the issue of moving from the default schedule to the input schedule.  (Defendant's Exhibit FF.)  Kray testified that when he became the project manager for SER in November 2007, he looked at the default schedule and learned that there was no subsequent schedule, which was a "problem."  According to Kray, the default schedule that was presented to the contractors during the bidding process, was in effect until March 2008 when the contractors signed the "contractor's schedule."

{¶ 6} On September 10, 2007, SER issued a "Notice to Proceed" to JHE. (Plaintiff's Exhibit 4.)  As stated in the Notice to Proceed, the contract completion date was December 30, 2008.  During the course of the project, all of the contractors were granted a nine-day extension of the contract completion date to January 9, 2009.  Change Order 007, dated May 28, 2008, granted a time extension of nine days, but JHE refused to sign the change order.  (Joint Exhibit A2.)

{¶ 7} JHE alleges that its work on the project was encumbered by numerous delays at the beginning on the project.  Greg Rudduck, who has been employed by JHE for over 30 years, was JHE's project manager and was at the construction site several times a week during the course of the project.  Initially, Rudduck testified that there was a delay in obtaining the temporary power on the project site.  According to Rudduck, JHE was unable to obtain the temporary power permit until the Owner received the building permit.  While Rudduck testified that the building permit was obtained approximately eight weeks after the issuance of the Notice to Proceed, the court finds that the building permit was issued on October 5, 2007, which was almost one month after the Notice to Proceed was issued.  (Defendant's Exhibit CC.)  According to both Rudduck and Kray, obtaining the building permit was the responsibility of the Owner, while obtaining the electrical permit was JHE's responsibility.

{¶ 8} Rudduck applied for the electrical permit on October 10, 2007. (Defendant's Exhibit GG.)  As of October 31, 2007, JHE was authorized to choose either American Electric Power or City of Columbus to provide the temporary power to the project site.  According to the testimony of both Large and Green, temporary power to the job site was in place around December 7, 2007.  Green testified that he handwrote his daily job entries until power was on site.  Green's handwritten notes continued until nearly the end of November 2007, at which time he began to make his entries in Prolog, a computer program used by the Owner and contractors to track their work.  (Plaintiff's Exhibit 47.)

{¶ 9} Rudduck also testified about additional delays into December 2007, which included a water line issue caused by the Owner not paying the "tap fee," and a soil issue which precluded JHE from installing the underground electrical lines. Robert Large is employed by JHE as an electrical foreman, a position he has held for approximately seven years. On the project, he was JHE's on-site foreman. Large explained that in late December 2007 and early January 2008, JHE was delayed on certain activities because the plumbing contractor had not completed its work; however, he admitted that JHE was performing other productive contract work during this time period. Large also testified that there were various delays in January and February 2008 caused by the masonry contractor and FH Martin. However, Large admitted that there are always "some" delays on a construction project.

{¶ 10} On January 3, 2008, Large noted in his Prolog entries that the schedule was starting to be impacted from the delays. Large made similar notations throughout the winter of 2008, but the last mention of any schedule impact was on April 7, 2008. (Joint Exhibit A3.) While Large testified that the project was still behind schedule after that date and that he "got tired" of noting delays in Prolog, the court finds that the failure to include such indication is significant.

{¶ 11} Large testified that in the summer of 2008, JHE had to bring on additional, experienced electricians to assist with the electrical work. In summary, Large explained that JHE's work was behind schedule on the project due to the delayed work of predecessor trades.

{¶ 12} As early as November 26, 2007, SER, through Kray, began the process of establishing the construction schedule. On December 14, 2007, Kray emailed the "Proposed Contract Schedule" to the contractors. (Plaintiff's Exhibit 8.) Kray's email requested that the contractors provide their input and sign and date the schedule by December 28, 2007. At the December 19, 2007 Progress Meeting, the construction schedule was discussed and JHE "noticed they are providing a [Gantt] chart which

indicates items to be completed at the same time. Jess Howard noted items on the schedule have moved up or back by as much as (2 1/2) months." (Defendant's Exhibit FF.) On January 2, 2008, Rudduck sent Kray an email that stated that JHE was being impacted by delays on the schedule. Rudduck wrote, "it is my opinion that Areas A and B are 4 to 5 weeks behind schedule." (Plaintiff's Exhibit 9.) Kray explained that JHE's response was relevant input for developing the construction schedule.

{¶ 13} According to Rudduck, he met with SER representatives on February 5, 2008, to discuss the delays on the project. During this meeting, JHE presented three Gantt charts to SER depicting the default schedule, the proposed contractor's schedule, and a revised default schedule. (Plaintiff's Exhibits 13A-13C.) Rudduck explained that he used this as a tool to show SER JHE's scheduling concerns. Rudduck testified that his concern was that the project was delayed at the beginning for various reasons and that JHE's completion date was going to stay the same such that JHE's work on the project would be compressed and stacking of trades would occur. Rudduck testified that Kray and Sisterhen acknowledged that there was a problem with the schedule at that time. Kray recalled the meeting and he testified that he did not agree with JHE's assumptions that stacking was going to occur on the project.

{¶ 14} On February 26, 2008, JHE wrote a letter addressed to Steve Volpe, of Columbus Public Schools stating, "This letter is to advise the Columbus Public School District that [JHE] is presenting a claim on Livingston Avenue Elementary School * * * [JHE] has no other choice but to ask for compensation on this project. Costs related to this claim can only be addressed when a workable schedule is obtained, and reviewed, to achieve an agreeable completion date." (Plaintiff's Exhibit 12.) Rudduck testified that this letter intended to raise the issue of stacking that JHE was experiencing.

{¶ 15} At a March 5, 2008 meeting with SER and Columbus Public Schools, JHE presented a list of approximately 50 project items that were behind schedule. (Plaintiff's Exhibit 14.) Rudduck testified that he believed these items were on the "critical path" to

JHE but he did not know if the Owner was of the same opinion. According to Rudduck, at the time of this meeting, the schedule on the project indicated that certain work was complete when, in fact, it was not complete on the job site. Kray admitted that these items were behind schedule and that he understood that JHE wanted to correct the schedule. Further, Kray testified that the list of items provided by JHE was input to help develop the contractor's schedule.

{¶ 16} Kray testified that when a project is behind schedule, there are four options: 1) ignore the delay; 2) extend the contract time; 3) issue a notice to comply; or 4) work as a "team" to find a solution. Kray testified that when JHE showed him the items in Exhibit 14 that were behind schedule in February 2008, he chose to have the contractors work as a team to solve the issue as he developed the construction schedule that was signed off by the contractors in March 2008. Kray testified that the list of items that JHE provided was helpful input for the proposed schedule pursuant to GC 4.3.6.1 and that JHE provided input from December through February, which he considered before issuing the schedule in March 2008.

{¶ 17} In a follow-up letter to the March 5, 2008 meeting, JHE sent a letter to Volpe which states that it unsuccessfully attempted to work with Kray on the scheduling issues and that the project "is behind schedule on approximately 54 activities on the default schedule, and approximately 33 activities on the updated default schedule." (Plaintiff's Exhibit 15.) SER responded with a letter on March 18, 2008, in which Kray writes, "you are correct in stating the project does not have a signed off schedule, but I disagree with the premise of your letter for why the schedule is not signed off." (Plaintiff's Exhibit 16.) Kray went on to write that SER had been working "diligently to have an approved Construction Schedule for the project" but that JHE has "applied the breaks due to the concern for the manpower available * * *." (Plaintiff's Exhibit 16.)

{¶ 18} On March 25, 2008, JHE wrote a letter addressed to Kray which again addresses JHE's concerns of the delays and lack of a schedule on the project.

(Plaintiff's Exhibit 17.)  The letter states, "I would like to provide you with an extent of impact these situations are causing [JHE], but at this point, it would not be practical or possible due to the status of the job in relationship to the schedule.  * * * It is our claim that the job is a minimum of ninety (90) days behind."  (Plaintiff's Exhibit 17.)

{¶ 19} On March 14, 2008, SER issued the construction schedule and the contractors signed off on the schedule; however, JHE signed the schedule under protest.  (Plaintiff's Exhibit 18.)  Once the construction schedule was released, it was updated monthly to show the progress of the various activities and JHE continued to object to those subsequent schedules.  (Plaintiff's Exhibits 21, 27, 28, 30, 31.)

{¶ 20} On April 3, 2008, JHE wrote a letter to Harris Design Services, care of Mike Kray, seeking a "request for equitable adjustment" under the contract.  The letter provides a history of the correspondence between the parties and states that JHE "has been informing the Board's authorized representatives that the Project has been delayed for reasons not caused by [JHE]. * * * [JHE] requests a 90 day extension to the schedule from the Board and the Commission."  (Defendant's Exhibit BB1.)  JHE cites Article 7 and "requests that the Board, with the approval of the Commission, issue a change order directing that [JHE] comply with the latest revised scheduled in accordance with G.C. 7.1.2 and 7.4 *et seq.*  In response to that directive, [JHE] will issue a proposal in accordance with G.C. 7.6."  (Defendant's Exhibit BB1.)  Jonathan Howard certified the April 3, 2008 letter: "I hereby certify that the increased costs incurred by the above claim are fairly and accurately assessed to be between $300,000.00 and $400,000.00, depending upon how soon predecessor trades recover to the original schedule.  [JHE] agrees to produce its bid work papers and job costs for the purpose of audit, subject to a reasonable protective order."  (Defendant's Exhibit BB1.)

{¶ 21} On April 23, 2008, Kray responded to JHE's April 3, 2008 letter and informed JHE that the request "only partially provides the information requested in

Article 8.1.2.1" and requested JHE to provide all of the items listed under Article 8.1.2. (Plaintiff's Exhibit 20.) SER sent an additional letter to JHE on May 28, 2008 because it had not received the additional information. (Plaintiff's Exhibit 22.) On June 4, 2008, JHE responded to SER's April 23, 2008 letter. (Plaintiff's Exhibit 46.)

{¶ 22} Change Order 007 was issued on May 28, 2008 and granted a nine-day extension of time. On June 25, 2008, JHE wrote a letter to SER stating that it "cannot accept the proposed 9 day extension of time to the contract" and JHE requested a 60-day extension of time. (Plaintiff's Exhibit 23.)

{¶ 23} On July 15, 2008, JHE provided a response to SER's request for additional information and updated costs pursuant to GC 8.1.2. (Plaintiff's Exhibit 25, Defendant's Exhibit BB2.) Howard testified that this was JHE's request for an Article 8 meeting. The letter stated that JHE estimated 822 man-days in its bid on the project but that as of July 6, 2008, it had expended 72 percent of its man-days to complete 53 percent of the work on the project. JHE estimated that an additional 445 man-days was required to finish the project because of stacking delays and inefficiencies. (Plaintiff's Exhibit 25.) Jonathan Howard certified "that the increased costs due to contract inefficiencies as of 7-6-08 is $78,389.63. Total estimated cost to complete contract is $222,945.00, for a total claim of $301,334.63." (Plaintiff's Exhibit 25.) Attached to the letter was a job cost report showing its labor details. Kray testified that he compared JHE's estimated labor costs as contained in the July 15, 2008 letter with a similar Columbus Public Schools building project and determined that JHE's labor estimate was not accurate. (Plaintiff's Exhibit 48.)

{¶ 24} Sisterhen testified that he provided the recommendation as to whether JHE should be paid on its claim and if so, how much. He testified that upon analysis of the claim, JHE failed to tie its costs to the scheduled activities. Further, he explained that JHE provided him with inconsistent figures regarding the amount of man-days its work was impacted. Reviewing JHE's July 15, 2008 letter, Sisterhen testified that he

was not "dissatisfied" with the amount of backup that JHE provided, but he testified that he requested a detailed cost report several times from JHE that was never provided to him. On August 20, 2008, Sisterhen asked JHE to provide detailed documentation to prove its impact and the amount thereof, which included, "the comparison of planned vs[.] actual labor; analysis of the labor hours presented regarding the onsite supervision which should not be included; and an analysis of the labor rate used in the calculation of the total request." (Plaintiff's Exhibit 29.)

{¶ 25} On November 20, 2008, JHE provided a one-page "labor analysis to date" which states that the "actual cost of stacking and project inefficiencies" to date was $120,853,68. (Defendant's Exhibit BB3.) In a May 27, 2009 email to Kray, JHE provided a week by week breakdown of its labor on the project through November 20, 2008. (Plaintiff's Exhibit 32.)

{¶ 26} On June 17, 2009, SER sent a letter to Columbus City School District informing it that SER had completed the "job site dispute resolution with [JHE] * * * We were not able to come to a resolution at the meetings and it has been determined by [SER] a change order is not warranted." (Plaintiff's Exhibit 34.) On June 18, 2009, SER sent a letter to JHE stating that the parties could not come to an agreement and that its request for a change order had been rejected. (Plaintiff's Exhibit 35.) JHE responded to the letter on July 27, 2009, stating that it intended to proceed on its claim for compensation. (Plaintiff's Exhibit 36.) JHE provided additional information to SER on August 3, 2009, and provided an updated job cost report, the original cap sheet, and weekly labor reports. (Defendant's Exhibit BB4.) On December 1, 2010, Columbus City Schools rejected JHE's claim and determined that no change order for additional compensation was warranted. (Plaintiff's Exhibit 39.)

{¶ 27} JHE claims that it is entitled to an equitable adjustment of the contract. JHE alleges that OSFC's failure to timely issue a construction schedule caused its work to stack on the project. JHE claims that it bid 822 man-days on the project but that it

incurred 1207.9 man-days of labor on the project. JHE seeks damages for the 385.9 man-day overrun that it experienced on the project for a total claim of $208,353.99. (Plaintiff's Post-Trial Brief, pg. 18-19.)

**LAW**

{¶ 28} Contract interpretation is a matter of law for the court. *City of St. Marys v. Auglaize Cty. Bd. of Commrs.,* 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38. When interpreting a contract, a court's principal objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 273 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. In determining the parties' intent, a court must read the contract as a whole and give effect, if possible, to every part of the contract. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.,* 78 Ohio St.3d 353, 361-362 (1997). "[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 246 (1978).

{¶ 29} "[W]hen a contract has an express provision governing a dispute, that provision will be applied; the court will not rewrite the contract to achieve a more equitable result." *Dugan & Meyers Constr. Co. v. Ohio Dept. of Admin. Servs.,* 113 Ohio St.3d 226, 2007-Ohio-1687, ¶ 39; *see also Cleveland Constr., Inc. v. Kent State Univ.,* 10th Dist. No. 09AP-822, 2010-Ohio-2906.

{¶ 30} JHE argues that it complied with the contractual requirements for its request for additional compensation. Article 8 of the general conditions of the contract details the procedure for requesting additional payment. The relevant portion of the parties' agreement reads as follows:

{¶ 31} "8.1.1 Any request for equitable adjustment of Contract shall be made in writing to the Architect, through the Construction Manager, and filed prior to Contract Completion, provided the Contractor notified the Architect, through the Construction Manager, no more than ten (10) days after the initial occurrence of the facts which are the basis of the claim.  To the fullest extent permitted by law, failure of the Contractor to timely provide such notice and a contemporaneous statement of damages shall constitute a waiver by the Contractor of any claim for additional compensation or for mitigation of Liquidated Damages."

{¶ 32} Although Article 8.1.1 clearly requires that a written claim be filed prior to contract completion, there is no writing requirement for the 10-day notice, and the court finds that such language is unambiguous.  OSFC argues that the "writing" requirement for Article 8.1.1 is contained in GC 1.3, which states, "Whenever any provision of the Contract Documents requires the giving of any notice, such notice shall be deemed to have been validly given if given in writing and delivered personally to the individual or to a member of the entity for whom the notice is intended * * *."  The court finds that GC 1.3 does not require that all notices must be in writing.  Consequently, the court must examine both the written and oral communications between JHE and SER in order to determine whether JHE complied with the notice provision of Article 8.1.1.

{¶ 33} It must first be determined whether JHE provided notice no more than 10 days after the initial occurrence of the facts that are the basis of the claim.  JHE contends that the 10-day notice requirement began to run when the construction schedule was issued in March 2008.  However, Rudduck admitted that the basis of JHE's claim were the delays and scheduling problems which occurred in the late fall of 2007 and early winter of 2008.  Rudduck testified that he did not provide notice within 10 days regarding the issue of the building permit nor did he provide notice within 10 days of the soil compaction issue.  Rudduck explained that he could not know the impact of the delays inasmuch as the contractor's schedule had not been signed at this

point in the project. However, Rudduck testified that JHE put SER on notice that the delays at the beginning of the project were a concern and that this was discussed at the Progress meetings beginning in December 2007.

{¶ 34} The court finds unpersuasive JHE's argument that the 10-day notice requirement did not begin until the construction schedule was issued in March 2008. Article 8 states that the notice must be given within 10 days, without regard to whether the project is operating under the default schedule or construction schedule. Furthermore, GC 4.3.1 states that the schedule included in the bid governs until the construction manager issues the construction schedule. The court finds that JHE provided notice within 10 days of the initial occurrence of the facts which are the basis of the claim. The court finds that JHE provided oral notice of its claim regarding the delays on the project as evidenced in the Progress meeting in December 2007 and on January 2, 2008, JHE informed SER that it was being impacted by delays on the schedule. (Plaintiff's Exhibit 9.)[2]

{¶ 35} Along with notice of a claim, Article 8.1.1 requires that JHE provide a contemporaneous statement of damages. The court finds that this contract language is unambiguous. However, for the following reasons, JHE failed to present sufficient evidence to persuade the court that it provided a contemporaneous statement of damages with its 10-day notice.

{¶ 36} On January 2, 2008, in response to SER's proposed schedule, JHE informed Kray that it was being impacted by delays on the schedule; however, there is no mention of any damages that JHE incurred. (Plaintiff's Exhibit 9.) JHE's February 26, 2008 letter informing Columbus Public Schools that it is "presenting a claim" states

_____

[1] JHE provided input to the Owner on October 1, 2007, by informing the Owner that there was a conflict in the default schedule inasmuch as it showed lighting being installed at the same time flooring was to be installed on the project. (Plaintiff's Exhibit 5.) However, the court finds that this scheduling defect was not related to the delays JHE claims it experienced in the late fall of 2007 and early winter of 2008.

that "[c]osts related to this claim can only be addressed when a workable schedule is obtained * * *." (Plaintiff's Exhibit 12.)  Additionally, JHE composed a letter to Columbus Public Schools on March 6, 2008 detailing its concern with a lack of schedule, but it does not address any damages that it had incurred.  Rudduck testified that he told Green in March 2008 that the schedules did not accurately reflect the work that had been completed on the project.  Rudduck testified that he explained to Green that this "costs" JHE; however, the court finds that this is insufficient evidence that a contemporaneous statement of damages was provided.  Rudduck admitted that he did not provide a contemporaneous statement of damages.  While JHE presented the Gantt Charts to SER in February 2008, these charts do not provide any contemporaneous damages and JHE failed to prove that it orally provided a contemporaneous statement of damages.  The first mention of any damages was JHE's April 3, 2008 letter which provided an estimate of its monetary damages, which was well beyond the time that JHE provided its 10-day notice in January 2008.

{¶ 37} In sum, even though JHE provided SER with timely notice of facts which support the basis of its claim, JHE never provided a contemporaneous statement of damages.  Thus, the court finds that JHE failed to comply with Article 8.1.1 of the contract, which results in waiver by JHE of its right to an equitable adjustment of the contract to compensate it for the additional costs of its labor.[3]

{¶ 38} Assuming, arguendo, that JHE had timely provided its notice and a contemporaneous statement of damages pursuant to Article 8.1.1, the court must determine whether JHE complied with the remaining requirements of Article 8.1.2 with respect to its claim for equitable adjustment.  Article 8.1.2 provides:

---

[1] JHE does not argue that OSFC waived strict compliance with the notice requirements of Article 8.1.1 by its words and actions.  *See Aggressive Mechanical, Inc. v. Ohio School Facilities Comm.,* Ct. of Cl. No. 2010-12745 (Sept. 18, 2012), *Stanley Miller Constr. Co. v. Ohio School Facilities Comm.,* Ct. of Cl. No. 2006-04351 (May 8, 2012).  JHE contends that it complied with the provisions of Article 8.

{¶ 39} "8.1.2 In every such written claim filed in accordance with paragraph GC 8.1.1, the Contractor shall provide the following information to permit evaluation of the request for equitable adjustment of the Contract.

{¶ 40} "8.1.2.1 Nature and amount of the claim, which the Contractor shall certify before a notary public is a fair and accurate assessment of the damages suffered by the Contractor;

{¶ 41} "8.1.2.2 Identification of persons, entities and events responsible for the claim;

{¶ 42} "8.1.2.3 Activities on the Construction Schedule affected by the claim or new activities created by any delay, interference, hindrance or disruption and the relationship with existing activities;

{¶ 43} "8.1.2.4 Anticipated duration of any delay, interference, hindrance or disruption;

{¶ 44} "8.1.2.5 Recommended action to avoid or minimize any future delay, interference hindrance or disruption.

{¶ 45} "8.1.2.6 A statement from the Contractor that the amount requested is the entire amount associated with the claim."

{¶ 46} The court finds that this contract language is unambiguous. In its post-trial brief, JHE argues that its request for equitable adjustment was submitted on April 3, 2008; however, in its reply brief, JHE contends that it submitted an Article 7 claim on April 3, 2008, and that its Article 8 claim was not submitted until July 15, 2008. The court finds that JHE's April 3, 2008 letter serves as its Article 8 claim. In fact, OSFC also considered this letter to be an Article 8 claim inasmuch as SER requested additional information pursuant to Article 8 on both April 23, 2008 and May 28, 2008. (Plaintiff's Exhibits 20, 22.) Initially, the court finds that JHE's April 3, 2008 letter fails to meet the requirements for a written claim pursuant to Article 8.1.2. While the letter states that in "accordance with Article 8.1.2 the above correspondence details the

scheduled activities impacted at any given time, and the persons, entities, and events responsible for the claim to the extent we are aware," the letter merely summarizes JHE's previous communications with SER. The letter does not identify the persons, entities and events responsible for the claim; it does not set forth the activities on the construction scheduled affected by the claim; it does not provide a recommended action to avoid or minimize any future delay; and it does not provide a statement that the amount requested is the entire amount associated with the claim. Even if JHE's previous correspondence with SER were "incorporated by reference" into the April 3, 2008 letter, the letter still fails to provide the amount of the claim and a statement that the amount requested is the entire amount associated with the claim inasmuch as JHE estimated its costs to be between $300,000 and $400,000 "depending on how soon predecessor trades recover to the original schedule." (Defendant's Exhibit BB1.)

{¶ 47} On April 23, 2008, SER requested that JHE provide additional information as required by Article 8.1.2 and SER sent an additional letter on May 28, 2008. (Plaintiff's Exhibits 20, 22.) On June 4, 2008, JHE responded to SER's April 23, 2008 letter. (Plaintiff's Exhibit 46.) After SER informed JHE that additional information was required to proceed with JHE's Article 8 claim, JHE submitted an additional letter to SER on July 15, 2008. (Plaintiff's Exhibit 25.)

{¶ 48} Sisterhen testified that the costs presented in JHE's claim did not tie to scheduled activities. While Rudduck testified that JHE could not segregate its costs for certain activities, the court finds that Sisterhen's testimony is credible that JHE was required to provide documentation that would show its impact and the dollar amount of such impact. Sisterhen testified that he requested this additional detailed job cost information from JHE, which would enable SER to assess whether JHE's impacts were tied to specific scheduled activities. The court finds that Sisterhen testified credibly that this information was not provided by JHE when it was requested.

**{¶ 49}** Article 8.1.3 of the contract states: "The Contractor shall promptly provide any additional information requested by the Construction Manager or the Architect." The court finds that this language is unambiguous and that JHE was required to *promptly* provide additional information regarding its claim. Rudduck testified that SER requested additional information regarding JHE's claim. Sisterhen testified credibly that SER requested additional, detailed back-up documentation regarding cost information which was never provided by JHE. Sisterhen explained that the information that JHE did provide regarding its costs was constantly changing. The court finds Sisterhen's testimony persuasive that he received detailed information from JHE only after litigation in this case commenced and that the information that JHE provided shortly before trial commenced would have satisfied his request for additional information if it had been timely generated. (Plaintiff's Exhibits 40 and 41.)

**{¶ 50}** The court finds that Sisterhen credibly testified that he requested additional information from JHE which was only provided shortly before trial in this matter. Accordingly, the court finds that JHE failed to comply with Article 8 such that its claim for equitable adjustment must fail.

**{¶ 51}** Article 6.4.1 of the contract states:

**{¶ 52}** "Any request by the Contractor for an extension of time shall be made *in writing* to the Construction Manager no more than ten (10) days after the initial occurrence of any condition which, in the Contractor's opinion, entitles the Contractor to an extension of time. Failure to timely provide such notice to the Construction Manager shall constitute a waiver by the Contractor for any claim for extension, damages or mitigation of Liquidated Damages, to the fullest extent permitted by law." (Emphasis added.)

**{¶ 53}** Additionally, Article 6.4.2 outlines the requirements that must be contained in the request:

{¶ **54**} "6.4.2 The Contractor's request shall provide the following information so that a timely response may be made to minimize any resulting damage, injury or expense.

{¶ **55**} "6.4.2.1 Nature of the interference, disruption, hindrance or delay;

{¶ **56**} "6.4.2.2 Identification of persons, entities and events responsible for the interference, disruption, hindrance or delay;

{¶ **57**} "6.4.2.3 Date (or anticipated date) of commencement of the interference, disruption, hindrance or delay;

{¶ **58**} "6.4.2.4 Activities on the Construction Schedule which may be affected by the interference, disruption, hindrance or delay, or new activities created by the interference, disruption, hindrance or delay and the relationship with existing activities;

{¶ **59**} "6.4.2.5 Anticipated duration of the interference, disruption, hindrance or delay;

{¶ **60**} "6.4.2.6 Specific number of days of extension requested;

{¶ **61**} "6.4.2.7 Recommended action to avoid or minimize any future interference, disruption, hindrance or delay;

{¶ **62**} "6.4.2.8 [A] detailed proposal for an increase in the Contract Price which would fully compensate the Contractor for all costs of acceleration of the Work needed to completely overcome the interference, disruption, hindrance, or delay; and

{¶ **63**} "6.4.2.9 [A] statement from the Contractor that the extension requested is the entire extension of the Contract Time associated with the interference, disruption, hindrance, or delay."

{¶ **64**} Unlike the 10-day notice required by Article 8.1.1, a request for an extension of time pursuant to Article 6 must be submitted in writing within 10 days after the initial occurrence of the condition which the contractor believes entitles it to an extension of time. The court finds that the language of Article 6.4 is unambiguous. Rudduck admitted that JHE did not provide written notice to the Owner within 10 days of

the issuance of the building permit.  Further, he admitted that JHE did not provide written notice within 10 days of the issue with the soil which occurred in the fall of 2007. Rudduck admitted that he knew that the delay in obtaining the building permit would cause a delay on the site work but he testified that he could not project the extent of the delay inasmuch as no construction schedule had yet been issued by SER.

{¶ 65} After Kray emailed the contractors with the proposed construction schedule on December 17, 2007, Rudduck responded on January 2, 2008 and stated, "these delays and impacts will require a time extension and/or acceleration."  (Plaintiff's Exhibit 9.)   However, this email does not meet the requirements of Article 6.4.2 inasmuch as it does not state the specific number of days requested for an extension.

{¶ 66} In this case, the evidence of a written request regarding JHE's claim for an extension of time first appears in the form of correspondence on February 26, 2008. JHE composed a letter addressed to Steve Volpe of Columbus Public Schools advising "Columbus Public School District that [JHE] is presenting a claim on [the project]." (Plaintiff's Exhibit 12.)   The letter states that there is no approved schedule, that the default schedule is falling behind, and that stacking was occurring on the project.  JHE states in the letter that its input on the proposed construction schedule "showed the project pushed out 90 days."  (Plaintiff's Exhibit 12.)  Finally, the letter states that JHE "has no other choice but to ask for compensation on this project."  (Plaintiff's Exhibit 12.)

{¶ 67} In its April 3, 2008 letter, JHE requested a 90-day extension to the schedule pursuant to Article 7.  On May 28, 2008, a change order was granted giving JHE a nine- day time extension pursuant to Article 6.2.1.1, but JHE refused to sign the change order, and on June 25, 2008, JHE sent a letter to SER rejecting the nine-day extension of time and requesting a 60-day extension of time.   (Joint Exhibit A2, Plaintiff's Exhibit 23.)

{¶ 68} The court finds that JHE requested a 90-day extension of time on February 26, 2008, and that after SER gave it a nine-day extension of time, it requested a 60-day

extension. However, the court finds that JHE failed to request the time extension within 10 days after the initial occurrence of the condition which JHE believed entitled it to an extension. Rudduck and Large both testified as to the delays that occurred on the project in late 2007 and early 2008, but the court finds that the earliest that JHE provided a written claim for an extension of time was on February 26, 2008, which is more than 10 days after the initial occurrence of the condition. Additionally, the court finds that JHE's requests for an extension of time failed to comply with the requirements of Article 6.4.2. For example, the February 26, April 3, and June 25, 2008 letters from JHE do not include a detailed price proposal pursuant to Article 6.4.2.8. Therefore, the court finds that JHE failed to comply with the contractual requirements to request an extension of time.

{¶ 69} In its post-trial brief, JHE contends that the April 3, 2008 letter is a claim pursuant to Article 7 and that when this request for a change order was not granted, it submitted an Article 8 notice in July 2008. (Plaintiff's Response Brief, pg. 5.) To the extent that JHE's April 3, 2008 letter is construed as a request for a change order, a change order granting a nine day extension of time was issued on May 29, 2008, which JHE refused to sign. On June 25, 2008, JHE informed SER through a letter that it could not accept the nine-day extension and requested a 60-day extension of time. (Plaintiff's Exhibit 23.) According to Article 7.4.8, if a contractor does not agree with the school district board's change order, it must request an Article 8 equitable adjustment within 10 days of receipt of notice of the school district board's change order. The court finds that this language is unambiguous. Here, the change order was issued on May 29, 2008, but JHE did not file its purported Article 8 claim until July 15, 2008. Accordingly, JHE's failure to comply with the contractual provisions bars its claims.

{¶ 70} Based on the foregoing, the court finds that JHE has failed to prove any of its claims by a preponderance of the evidence. Accordingly, the court shall render judgment in favor of OSFC.

_____
CLARK B. WEAVER SR.
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JESS HOWARD ELECTRIC CO.

     Plaintiff

     v.

OHIO SCHOOL FACILITIES COMMISSION

     Defendant

Case No. 2010-12737

Judge Clark B. Weaver Sr.

JUDGMENT ENTRY

{¶ 71} This case was tried to the court on the issues of liability and damages. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

David A. Beals
James E. Rook
Matthew L. Westerman
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Douglas M. Beard
Michael F. Copley
1015 Cole Road
Galloway, Ohio 43119

007
Filed April 26, 2013
To S.C. Reporter August 22, 2013