FOSTER WHEELER ENVIRESPONSE, INC., APPELLEE AND CROSS-APPELLANT, *v.* FRANKLIN COUNTY CONVENTION FACILITIES AUTHORITY, APPELLANT; LAWHON & ASSOCIATES, INC., CROSS-APPELLEE.

[Cite as *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353.]

(No. 95–2467—Submitted January 7, 1997—Decided May 14, 1997.)

354

*Vorys, Sater, Seymour & Pease, Michael W. Donaldson* and *John C. Elam,* for appellee and cross-appellant.

*Chester, Willcox & Saxbe, Richard A. Frye, John J. Chester* and *Karen H. Penley,* for appellant.

*Taft, Stettinius & Hollister* and *Michael A. Byers,* for cross-appellee Lawhon & Associates.

*Janet E. Jackson,* City Attorney, and *Daniel W. Drake,* First Assistant City Attorney, urging reversal for *amicus curiae,* city of Columbus, Ohio.

*John E. Gotherman,* urging reversal for *amici curiae,* Ohio Municipal League and Ohio Municipal Attorneys Association.

*Calfee, Halter & Griswold, Stanley J. Dobrowski* and *Albert J. Lucas,* urging reversal for *amicus curiae,* Ohio Building Authority.

---

ALICE ROBIE RESNICK, J. The broad issue in this case is whether Envirresponse may recover from CFA, or alternatively from Lawhon, for the contaminated material in excess of one hundred forty cubic yards that Envirresponse excavated and transported from the construction site of the Greater Columbus Convention Center. Since the cause comes to the court upon an appeal from summary judgment, our inquiry is circumscribed by the standard set forth in Civ.R. 56(C).

## I

## CFA'S APPEAL

It is universally recognized that where a building or construction contract, public or private, stipulates that additional, altered, or extra work must be ordered in writing, the stipulation is valid and binding upon the parties, and no recovery can be had for such work without a written directive therefor in compliance with the terms of the contract, unless waived by the owner or employer. *Lathrop Co. v. Toledo* (1966), 5 Ohio St.2d 165, 34 O.O.2d 278, 214 N.E.2d 408; *Portsmouth v. Nicola Bldg. Co.* (1922), 106 Ohio St. 550, 140 N.E. 174; *Expanded Metal Fireproofing Co. v. Noel Constr. Co.* (1913), 87 Ohio St. 428, 101 N.E. 348; *Carthage v. Diekmeier* (1909), 79 Ohio St. 323, 87 N.E. 178; *Baltimore & Ohio RR. Co. v. Jolly Bros. & Co.* (1904), 71 Ohio St. 92, 72 N.E. 888; *Ashley v. Henahan* (1897), 56 Ohio St. 559, 47 N.E. 573; *Cincinnati v.*

*Cameron* (1878), 33 Ohio St. 336; 65 American Jurisprudence 2d (1972) 75–87, Public Works and Contracts, Sections 189–198; Annotation, Effect of Stipulation, In Private Building or Construction Contract, That Alterations or Extras Must Be Ordered In Writing (1965), 2 A.L.R.3d 620, 631, 1965 WL 13274, Section 3; Annotation, Effect of Stipulation, In Public Building or Construction Contract, That Alterations or Extras Must Be Ordered In Writing (1965), 1 A.L.R.3d 1273, 1281–1282, 1965 WL 13222, Section 3; 7 P.O.F.2d (1975) 239, 247–248, Authorization for Extra Work Under Building Contract, Section 2; 25 P.O.F.2d (1981) 561, 571, 573–574, Building and Construction Contracts—Waiver of Provision Requiring Written Change Orders, Sections 2 and 3.

The pivotal question in this case is whether the contract between CFA and Enviresponse should be interpreted to contain a requirement for written authorization where more than the base amount of one hundred forty cubic yards of contaminated material is found to be present at the site.

Despite the parties' attempts to correlate this case with others, our review of the innumerable cases and commentary on the subject leads us to the inescapable conclusion that the meaning of any particular construction contract is to be determined on a case-by-case and contract-by-contract basis, pursuant to the usual rules for interpreting written instruments. See *Cameron, supra,* 33 Ohio St. at 374.

The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus.

"Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. Technical terms will be given their technical meaning, unless a different intention is clearly expressed. *Cincinnati Ins. Co. v. Duffield* (1856), 6 Ohio St. 200, paragraph one of the syllabus.

Most important to this case, a writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole. *Legler v. United States Fid. & Guar. Co.* (1913), 88 Ohio St. 336, 103 N.E. 897; *Kelly v. Carthage Wheel Co.* (1900), 62 Ohio St. 598, 610, 57 N.E. 984, 986; *Lesher v. Karshner* (1890), 47 Ohio St. 302, 305, 24 N.E. 882; *Miller v. Ratterman* (1890), 47 Ohio St. 141, 156, 24 N.E. 496, 499; *Cincinnati, Sandusky & Cleveland RR. Co. v. Indiana, Bloomington & W. Ry.*

*Co.* (1886), 44 Ohio St. 287, 7 N.E. 139; *Dodd v. Bartholomew* (1886), 44 Ohio St. 171, 175, 5 N.E. 866, 867. See, also, *New York Coal Co. v. New Pittsburgh Coal Co.* (1912), 86 Ohio St. 140, 167, 174, 99 N.E. 198, 204, 206 (recognizing the maxim *noscitur a sociis,* that the meaning of words or provisions in a contract may be indicated or controlled by those with which they are associated).

Both CFA and Enviresponse agree upon the rule as expressed in *Farmers Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 94 N.E. 834, paragraph six of the syllabus:

"In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain."

Although these rules contain a measure of flexibility in their application, they are designed only to ascertain the parties' intent. It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result. A contract "does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto." *Ohio Crane Co. v. Hicks* (1924), 110 Ohio St. 168, 172, 143 N.E. 388, 389. See, also, *Aultman Hosp. Assn., supra,* 46 Ohio St.3d at 54–55, 544 N.E.2d at 924.

The parties and the courts below all agree that Enviresponse was required under its contract with CFA to obtain written authorization for any changes in the "scope of work." However, the court of appeals took the view that written authorization was required *only* for changes in the "scope of work." Accordingly, it saw the determinative issue as being whether the removal and disposal of contaminated waste in excess of the base bid amount of one hundred forty cubic yards could properly be characterized as an "increase * * * in the scope of work stated." The appellate court concluded that no change in the scope of work occurred when Enviresponse excavated and transported more than the estimated one hundred forty cubic yards and, therefore, no written authorization was required. We disagree.

Article 3 of the contract provides that "[n]o *alterations* shall be made in the work shown or described by the plans and specifications, except upon the written order of the Owner." (Emphasis added.) Only after the alteration is made pursuant to a written order is the "value of the work added * * * [to] be computed * * *, and the amount so ascertained [to] be added to * * * *the base bid amount.*" (Emphasis added.) Article 7, Section b of the general conditions makes clear that the term "alterations" is intended to encompass "increases * * * in the quantity of work." Whatever legal significance there may be in other contexts of defining "scope of work," and regardless of whether the removal

of excess contaminated waste falls within that definition, such work constitutes an "alteration," as that term is used in this contract, for which a written order is required.

Enviresponse argues that such an interpretation fails to give meaning and purpose to "the final paragraph of [*i.e.*, the footnote in] the Unit Prices Attachment A." According to Enviresponse, we must "establish[ ] constructions of the second and final paragraphs of the Unit Prices Attachment A that [give] 'meaning and purpose' * * * to both paragraphs." The construction urged is that "CFA obligated itself to pay Enviresponse for each cubic yard of hazardous waste beyond the 140 cu. yd. estimate. * * * [T]he mechanism for obligating itself was *not* by written change order *but instead* by contractor measurements observed by the consultant."

If the Unit Price Attachment constituted the entire agreement between CFA and Enviresponse, we might find some merit in Enviresponse's interpretation of the footnote thereto. However, the point to reading the contract as a whole is to avoid this very kind of abstract interpretation. In construing the agreement, we must attempt to give effect to each and every part of it, not just "the second and final paragraphs of the Unit Price Attachment A," and avoid any interpretation of one part which will annul another part. *Legler, supra*, 88 Ohio St. 336, 103 N.E. 897; *Farmers Natl. Bank, supra*, 83 Ohio St. 309, 94 N.E. 834, at paragraph six of the syllabus.

Construing the agreement as a whole, we find that the parties' intent in inserting the footnote was to set forth a prenegotiated unit price for adjusting the contract sum in the event an alteration involving an increase or decrease in the quantity of work was ordered in writing. The unit price is a preset method of calculating the value of additional work to be used to adjust the contract sum where the amount of waste is found to be more than the one hundred forty cubic yards. It is not a prenegotiated waiver of the requirement for written authorization. "The compensation to be paid was, therefore, based upon a price fixed as a result of competitive bidding, and was not left to the subsequent agreement of the parties when it might be possible for either to take advantage of the situation of the other." *Nicola, supra*, 106 Ohio St. at 557, 140 N.E. at 176.

This interpretation affords meaning and purpose to all parts of the agreement, whereas the interpretation urged by Enviresponse would in effect annul those parts requiring a written order for any alteration. The primary purpose of requiring written authorization for alterations in a building or construction contract is to protect the owner against unjust and exorbitant claims for compensation for extra work. It is generally regarded as one of the most effective methods of protection because such clauses limit the source and means of introducing additional work into the project at hand. It allows the owner to

investigate the validity of a claim when evidence is still available and to consider early on alternative methods of construction that may prove to be more economically viable. It protects against runaway projects and is, in the final analysis, a necessary adjunct to fiscal planning. *Ashley, supra,* 56 Ohio St. at 572–573, 47 N.E. at 576–577; *Cameron, supra,* 33 Ohio St. at 369–370; *Johnson Constr., Inc. v. Rugby Mun. Airport Auth.* (N.D.1992), 492 N.W.2d 61, 63–64; 65 American Jurisprudence 2d, *supra,* at 76, Section 190; 25 P.O.F.2d, *supra,* at 569, Section 1. It is doubtful that the footnote was intended to serve in any capacity which would override the written-order provisions, or permit an increase of the contract sum solely upon the unilateral performance of additional work by Enviresponse.

Enviresponse further argues that it is entitled to recovery pursuant to *Nicola, Lathrop,* and *Cameron, supra.* These cases essentially provide that, under proper circumstances, the refusal of a public entity to give a contractor a written order for alterations, in accordance with a contract stipulation therefor, may constitute a breach of the contract or amount to a waiver of written orders. However, in each case it was undisputed that the alteration was in fact ordered, either orally or in writing, by someone with the authority to do so.

There is no evidence in the record that CFA ordered Enviresponse to remove and transport more than the base amount of one hundred forty cubic yards of contaminated waste. The most that can be inferred from the record is that CFA had knowledge that alterations involving increases in the quantity of work were being made, and asserted no objection. However, mere knowledge, and even acquiescence, is not enough for recovery. *Lathrop, supra,* 5 Ohio St.2d at 174, 34 O.O.2d at 283, 214 N.E.2d at 414; *Diekmeier, supra,* 79 Ohio St. at 344–345, 87 N.E. at 184. "Such stipulation [for a written order] being for the benefit of the employer, proof of a waiver must either be in writing, or by such clear and convincing evidence as to leave no reasonable doubt about it." *Ashley, supra,* 56 Ohio St. 559, 47 N.E. 573, paragraph five of the syllabus. Thus, " '[e]quivocal conduct, or conduct of doubtful import, is not sufficient.' " *Id.,* 56 Ohio St. at 574, 47 N.E. at 577, quoting *O'Keefe v. St. Francis's Church* (1890), 59 Conn. 551, 561, 22 A. 325, 327.

Nor can recovery against CFA be predicated on actions taken or statements made by Lawhon. It is generally recognized that, in the absence of express authority, an engineer, architect, superintendent or inspector in charge of or assigned to public building or construction work has no power to waive or modify a stipulation requiring a written order for alterations, even where that person may authorize alterations in writing. *Jolly Bros. & Co., supra,* 71 Ohio St. 92, 72 N.E. 888, at paragraph one of the syllabus; *Ashley, supra,* 56 Ohio St. at 572–573, 47 N.E. at 576; Annotation, *supra,* 1 A.L.R.3d at 1312–1318, Sections 21–25; 65 American Jurisprudence 2d, *supra,* at 81–82, Public Works and Contracts,

Section 194. There is nothing about the nature and duties of an environmental consultant that would suggest that he falls outside the purview of this rule. There was nothing in either the contract between CFA and Enviresponse or the contract between CFA and Lawhon which gave Lawhon the authority to waive the requirement for written orders. Under the CFA–Lawhon contract, Lawhon's authority is limited to ordering "minor changes in the Work not involving an adjustment in the Contract sum or an extension of the Contract Time."

Accordingly, summary judgment was properly entered in favor of CFA, and the judgment of the court of appeals is reversed on this issue.

## II

### ENVIRESPONSE'S CROSS–APPEAL

The issue presented here is whether Enviresponse may proceed against Lawhon on its claims for negligent misrepresentation.

In its first claim, Enviresponse alleges that "[t]he bid specifications and the contract [prepared by Lawhon] negligently represented that the amount of contaminated waste was approximately 140 cubic yards, that the soil immediately above the waste had negligible contamination and could be used as backfill, and that there was little contamination of soil outside the box."

In its second claim, Enviresponse alleges that Lawhon misrepresented that "no additional authorization was needed to remove the additional contaminated material discovered on the site." In support, Enviresponse relies upon Finton's affidavit and Markferding's field notes.

Enviresponse's argument is primarily devoted to distinguishing the court's decision in *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 560 N.E.2d 206. There it was held that "[i]n the absence of privity of contract no cause of action exists in tort to recover economic damages against design professionals involved in drafting plans and specifications." *Id.* at the syllabus. Enviresponse contends that Lawhon was given excessive control over Enviresponse on this project, and that such control constitutes a sufficient nexus between them to substitute for contractual privity. See *In re Hughes–Bechtol, Inc.* (Bankr.S.D.Ohio 1991), 124 B.R. 1007, 1019–1020; *A.R. Moyer, Inc. v. Graham* (Fla.1973), 285 So.2d 397; Annotation, Tort Liability of Project Architect for Economic Damages Suffered by Contractor (1975), 65 A.L.R.3d 249.

There is no need for the court to revisit, clarify, or define the parameters of *Floor Craft* at this time. It is sufficient to note that there is no such thing as a cause of action for excessive control. Privity, or its substitute, is not a tort; it serves only to identify an interest or establish a relationship necessary to allow

for the bringing of a tort action for purely economic damages. Regardless of whether the threshold requirement for privity is met, or even justified, there can be no recovery where a necessary element to the tort itself is found to be missing.

Article 5, Section h of the general conditions cautions that "[i]n unit price Contracts, the quantities listed in the Form of Proposal are to be considered as approximate and are to be used for the comparison of bids only." This language operates as a disclaimer, putting Enviresponse on notice not to rely on the estimates as to the quantity of waste. See *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 837–838. Thus, "as a matter of law, [Enviresponse] could not have justifiably relied on the alleged misrepresentation of the quantity of waste." *R.J. Wildner Contracting Co., Inc. v. Ohio Turnpike Comm.* (N.D.Ohio 1996), 913 F.Supp. 1031, 1040.

Enviresponse argues that *Wildner* does not apply because Lawhon did not have a contract with Enviresponse; thus, the disclaimer cannot protect Lawhon. However, the gravamen of Enviresponse's claim is that the alleged misrepresentations emanated from "[t]he bid specifications and the contract." These documents formed the agreement between Enviresponse and CFA. Thus, the very sources of the alleged misrepresentations embodied a disclaimer as to reliance thereon.

In any event, Finton testified that prior to submitting the proposal for work to CFA, it was his "feeling * * * that the way that this project was put out in a specification, that there was a likelihood that we would encounter additional volume of materials. * * * [W]ithout actually excavating * * * it would be very difficult to be able to determine that a hundred and forty cubic yards was the only amount of material that was going to have to be removed." He recalled "wanting to make sure that the unit price was sufficient so that if we got into additional materials found, that we were going to be able to do the work and still make money." He explained further:

"I have worked on a large number of site clean-ups where materials are to be removed, and I'm aware of a lot of others that I was not directly involved with; and I don't know of any where the specified amount of material was not exceeded in terms of remediation.

"It is very difficult when you're working with something like this circumstance where it is below ground and all you can do is do drillings in a grid pattern over the affected area to determine specifically what the volumes are that you're going to have to deal with.

"The only way to do that is to get in and actually do the excavation and keep track of what you're removing."

Thus, irrespective of the contractual disclaimer, Enviresponse could not have justifiably relied on the estimates relative to the quantity of waste.

As to Enviresponse's second claim, there is no allegation that anyone other than Braun represented that no additional authorization was required to remove the excess contaminated waste. Pursuant to the supplementary conditions set forth as part of the agreement between Enviresponse and CFA, the following pertinent limitations of authority were placed upon the on-site monitor:

"SC–2.1.6.1 OSM has no authority to permit or require any deviation from the Contract Documents or substitution of materials or equipment."

"SC–2.1.6.3 OSM will not advise on, issue directives relative to, or assume control over any aspect of the means, methods, techniques, sequences, or procedures unless such advice or directions are specifically required by the Contract Documents."

"SC–2.1.6.5 OSM will not accept Contractor's Work on behalf of either Consultant or Owner."

"SC–2.1.6.7 OSM has no authority to act as agent of the Consultant except as set forth herein."

In applying the economic-loss rule to bar tort recovery in construction contract cases, the majority in *Floor Craft, supra,* was concerned that by asserting a tort claim, the contractor may try to "avoid its contract terms." *Id.,* 54 Ohio St.3d at 7, 560 N.E.2d at 212. The dissenting opinion in *Floor Craft* agreed, but felt there was no need to "disinter the privity doctrine to do this." *Id.,* 54 Ohio St.3d at 14, 560 N.E.2d at 217 (H. Brown, J., dissenting). Thus, the one point on which the majority and dissenting opinions in *Floor Craft* agree is that the contractor should not be permitted to circumvent its contract terms by virtue of labeling the action a tort.

The limitations placed upon Braun's authority by the supplementary conditions clearly preclude Enviresponse from relying upon Braun's alleged representations regarding the lack of need for written orders. Although it appears from the record that no one from Enviresponse had read the contract, it is nevertheless bound by its terms.

Accordingly, the judgment of the court of appeals, for the reasons stated herein, is affirmed as to this issue.

In light of the foregoing, the judgment of the court of appeals is reversed as to CFA and affirmed as to Lawhon, and the summary judgment entered by the trial court is reinstated.

*Judgment affirmed in part*
*and reversed in part.*

M OYER, C.J., D OUGLAS, C OOK and L UNDBERG S TRATTON, JJ., concur.

F.E. S WEENEY and P FEIFER, JJ., dissent.