[Cite as *Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2014-Ohio-1973.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CINCINNATI INSURANCE | : | |
| COMPANY, et al. | : | Appellate Case No. 25830 |
| | : | |
| Plaintiffs-Appellants | : | Trial Court Case No. 2012-CV-6525 |
| | : | |
| v. | : | |
| | : | |
| GREENMONT MUTUAL HOUSING | : | (Civil Appeal from |
| CORPORATION | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 9th day of May, 2014.

. . . . . . . . . .

MATTHEW M. SCHMIDT, Atty. Reg. #0072898, 130 West Second Street, Suite 1850, Dayton, Ohio 45402
      Attorney for Plaintiffs-Appellants

MICHAEL B. MILLER, Atty. Reg. #0079305, and JAMES G. KORDIK, Atty. Reg. #0022700, Rogers & Greenberg, LLP, 2160 Kettering Tower, Dayton, Ohio 45423
      Attorneys for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Plaintiffs-appellants Cincinnati Insurance Company (CIC) and Kim Medlin

appeal from a summary judgment rendered in favor of defendant-appellee Greenmont Mutual Housing Corporation (Greenmont). CIC and Medlin contend that the trial court erred in failing to strike an affidavit attached to Greenmont's motion for summary judgment. CIC and Medlin also contend that the trial court erred in finding that Greenmont is not responsible for paying the costs of repair to a water line within an addition Medlin constructed.

{¶ 2}    We conclude CIC and Medlin were not prejudiced by the trial court's failure to strike the affidavit attached to Greenmont's motion, because the trial court did not consider the affidavit in granting Greenmont summary judgment. Furthermore, we conclude that the trial court did not err in holding that Greenmont was not responsible for the repairs to the addition. Accordingly, the judgment of the trial court is Affirmed.

**I**. **A Water Pipe Ruptures and Causes Damage to Medlin's Addition**

{¶ 3}    Greenmont is a mutual housing cooperative that owns and operates 500 housing units. Because Greenmont owns all the units, tenants do not own the units they occupy. The tenants own shares of Greenmont, and a tenant's ownership of a share permits the tenant to occupy one of Greenmont's units. Greenmont is governed by a Board of Trustees, operating under the Management Code of the Greenmont Mutual Housing Corporation (the Code), which sets forth the rights and responsibilities of Greenmont and its tenant share owners.

{¶ 4}    The Code "outlines the responsibilities with respect to business administration, personnel, operation and maintenance, and resident and community relations of the Greenmont Mutual Housing Corporation together with a regular plan of action governing the execution of the undertakings involved as shown by Operation Budgets and Estimates of Average Annual Income and Expense." The Code, Section 3, p. 18.

{¶ 5} Kim Medlin occupies a housing unit owned by Greenmont located at 1814 Briedweng Avenue, Kettering, Ohio. In 1995, Medlin sought to construct an addition to this unit. Medlin went through all the necessary steps set forth in the Code to obtain approval for his addition, which included a new master bedroom, master bathroom, and walk-in closet. Construction began in 1996, and was completed in 1997.

{¶ 6} In January 2009, Medlin discovered a water line ruptured within one of the walls of the master bathroom. Shortly thereafter, Medlin notified Greenmont that there was water damage, and requested that Greenmont make the necessary repairs. Greenmont refused. Consequently, Medlin contacted his personal insurance company, CIC, to make the repairs. CIC subsequently paid for the repairs to Medlin's unit.

## II. The Course of Proceedings

{¶ 7} In September 2012, CIC and Medlin brought this action in negligence (Count One) and breach of contract (Count Two) against Greenmont, based on the latter's having failed to make repairs to the housing unit. CIC is party to this suit because it paid for the repairs and is therefore subrogated to the rights of Medlin if he prevails against Greenmont.

{¶ 8} CIC filed a motion for summary judgment. Two weeks later, Greenmont filed a memorandum in opposition to CIC's motion for summary judgment, and a cross-motion for summary judgment, which was supported by the affidavit of Dian Fischer. On June 21, 2013, the trial court granted, in part, CIC's motion to strike the affidavit of Dian Fischer. The trial court also denied CIC's motion for summary judgment, and granted Greenmont's cross-motion for summary judgment. CIC and Medlin appeal from the judgment rendered against them on their complaint.

## III. The Trial Court Did Not Rely on the Affidavit of Dian Fischer

**in Granting Greenmont's Motion for Summary Judgment**

{¶ 9} CIC and Medlin's First Assignment of Error states:

THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION

FOR SUMMARY JUDGMENT BECAUSE THE APPELLEE FAILED TO

CARRY ITS INITIAL BURDEN UNDER CIV. R. 56(C) TO OBTAIN

SUMMARY JUDGMENT BY SOLELY RELYING ON AN AFFIDAVIT THAT

WAS INADMISSIBLE, INSUFFICIENT AND IMPROPER UNDER OHIO LAW.

{¶ 10} CIC and Medlin contend that Greenmont did not meet its initial summary judgment burden, because the affidavit of Dian Fischer, the only affidavit attached to Greenmont's motion for summary judgment, did not indicate that she had personal knowledge of the "Relevant Facts" set forth in Greenmont's motion for summary judgment. *See* Civ. R. 56(E) (supporting affidavits "shall be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence").

{¶ 11} But the trial court did not rely on Fischer's affidavit in deciding to render summary judgment for Greenmont. To the contrary, the trial court noted several times throughout its opinion that "the dispute centers on the interpretation of the language of the Management Code." Dkt. 36, p. 15. The trial court then held that, under the terms of the Code, Greenmont did not breach the agreement and did not owe any duty to Medlin to maintain the water line within the wall of the addition. *Id.* at 16-17. Because the trial court considered only the unambiguous language of the Code, the adequacy of Fischer's affidavit is irrelevant. CIC cannot, therefore, show prejudice. *Lewis v. J.E. Wiggins & Co.,* 10th Dist. Franklin No. 04-AP-469, 2004-Ohio-6724, ¶ 33 (affirming summary judgment and noting that, "even assuming the affidavit contained inadmissible hearsay, appellant can show no prejudice by the trial court's failure to

strike this affidavit").

{¶ 12}   CIC and Medlin next contend that the Management Code was not properly before the trial court because Greenmont did not attach it to Fischer's affidavit in its cross-motion for summary judgment. According to CIC, then, the trial court could not grant summary judgment to Greenmont based on provisions in the Code. We disagree.

{¶ 13}   In deciding whether summary judgment is proper, a court can consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any * * * ." Civ. R. 56(C). Furthermore, a party may attach a paper or parts of papers if the copies are sworn and certified, based on personal knowledge, and attached or served with the affidavit.   Civ. R. 56(E).

{¶ 14}   The Code was part of the trial court's record when CIC filed its motion for summary judgment.   Medlin averred in his affidavit in support of summary judgment – consistent with Civ. R. 56(C) and (E) – that the Code attached to his affidavit was a true and accurate copy based on his personal knowledge. Two weeks later, Greenmont filed its cross-motion for summary judgment, relying upon the same Code that CIC and Medlin had put before the trial court. Thus, the trial court properly considered the Code in granting Greenmont's cross-motion for summary judgment.

{¶ 15}   CIC and Medlin's First Assignment of Error is overruled.

### IV. The Management Code's Plain Terms Require the Tenant
### to Pay for All Maintenance and Repairs to Additions

{¶ 16}   CIC and Medlin's Second Assignment of Error states:

THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION

FOR SUMMARY JUDGMENT BECAUSE THERE IS A GENUINE ISSUE OF MATERIAL FACT IN THAT APPELLEE'S EMPLOYEES ACKNOWLEDGE THE DISPUTE OF FACTS IN THEIR DEPOSITION TRANSCRIPTS.

{¶ 17} When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.,* 77 Ohio St. 3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234*, ¶ 11 (quoting *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App. 3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997) (citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St. 2d 116, 413 N.E.2d 1187 (1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App. 3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 18} Civ. R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St. 3d 461, 463, 880 N.E.2d 88 (2008). Summary judgment is proper when the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90-CA-96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehouse Co.*, 54 Ohio St. 2d 64, 67, 375 N.E.2d 45 (1978)). The initial burden is on the moving party to show

that there is no genuine issue of material fact. *Dresher v. Burt,* 75 Ohio St. 3d 280, 292-93, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dotson v. Freight Rite, Inc.,* 2d Dist. Montgomery No. 25495, 2013-Ohio-3272, ¶ 41 (citation omitted).

**{¶ 19}** CIC and Medlin contend that the trial court improperly interpreted the Code in holding that Greenmont was not responsible for repairing the water pipe that burst in the bathroom of the addition. According to CIC and Medlin, the Code "specifically put the maintenance/repair of the item that broke (plumbing) on the Defendant/Appellee," and two Greenmont property managers' depositions support this interpretation of the Code. Brief, p.13-14.

**{¶ 20}** In the arena of contract disputes, "[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus.*, 15 Ohio St. 3d 321, 322, 474 N.E.2d 271 (1984). "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 361, 678 N.E.2d 519 (1997). The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 131, 509 N.E.2d 411 (1987), paragraph one of the syllabus. When the terms in a contract are unambiguous, "courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Shifrin v. Forest City Enters., Inc.*, 64 Ohio St. 3d 635, 638, 597 N.E.2d 499 (1992) (citation omitted).

**{¶ 21}** The test for determining whether the terms of a contract are ambiguous is well-established in Ohio: "Common words appearing in a written instrument will be given their

ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.* (quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 246, 374 N.E.2d 146 (1978)). If no ambiguity appears on the face of the instrument, "parol evidence cannot be considered in an effort to demonstrate such an ambiguity." *Id.*

{¶ 22}  The beginning point in interpreting the Code is Section 1:01, Part VI, "Management Maintenance Policy," which states:

Section 1:01 The building structures, plumbing, gas and electrical systems, and all other project equipment and grounds improvements shall be repaired and maintained by the Corporation in the manner necessary to prevent uneconomical deterioration of the component parts thereof, except as noted in Sections 1:02 - 1:07, Part IV.

{¶ 23}  This section requires Greenmont to repair and maintain building structures, including plumbing, "except as noted in Sections 1:02-1:07, Part IV." Turning to the exceptions, we first consult Section 1:04, the section CIC and Medlin rely on:

The Corporation assumes responsibility for furnaces (excluding air conditioning modifications), water heaters, water lines, gas lines, electrical lines (excluding switches, receptacles and fixtures) and normal structural repairs.

{¶ 24}  The next exception is Section 1:06, the section Greenmont relies upon:

Part IV–Resident Regulation

Section 1:06 Structural alterations, additions, and removal of any kind may be made by residents only after prior written approval by the Management, and

only providing the resident has less than 3 late pays and/or outstanding debts in the last 12 months.

*\*\**

<u>DEFINITIONS:</u> The term "addition" as used in this section includes, but is not limited to: patios, non-portable storage units, sun porches, rooms, awnings, awning covered patios and central air-conditioning.

1. Structural alterations and additions, once made by the resident, become the property of the Corporation. Alterations may be changed back to standard, or additions removed by the Corporation if found substandard when the unit becomes vacant and the cost of removal and repairs needed to return the unit to a standard condition will be at the expense of the Corporation and/or the outgoing resident as determined by the Management.

Tenant is held responsible for additional cost incurred while doing maintenance work on Greenmont's structure due to additions.

2. Responsibility:

*\*\**

(f) *The resident shall assume any and all costs of maintenance and repairs on existing or future additions as defined in this Section 1:06.* (Emphasis added).

**{¶ 25}** A court must give effect to every provision in the contract, if possible.

In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to

give it another construction that would give it meaning and purpose, then the latter construction must obtain. *Farmers Nat'l Bank v. Delaware Ins. Co.* 83 Ohio St. 309, 94 N.E. 834 (1911), paragraph six of the syllabus (quoted with approval by *Foster Wheeler Enviresponse, supra*, at 362).

{¶ 26}   Sections 1:04 and 1:06 are both exceptions and must be read together so as to give effect to both provisions, if possible. While it is true that Section 1:04 states that Greenmont assumes responsibility for "water lines," it does not state that Greenmont assumes responsibility for *all* water lines. Nor does it state that Section 1:04 applies to additions. Section 1:06, on the other hand, sets forth in particular detail the approval process that a tenant must follow when constructing an addition to Greenmont's units, as well as the financial responsibilities for maintaining and repairing an addition. By subsection 2(f)'s plain terms, the resident "shall assume *any and all costs* of maintenance and repairs on existing or future additions." (Emphasis added). Construing Section 1:04 and Section 1:06 together, then, we conclude that Section 1:06 was intended to govern specifically all the maintenance and repair costs related to additions, whereas Section 1:04 was intended to govern maintenance and repair costs in general. This interpretation gives meaning and purpose to both parts, and avoids an interpretation of one part "which will annul another part." *Foster Wheeler Enviresponse, supra*, at 364 (citing *Legler v. U.S. Fidelity & Guaranty Co.,* 88 Ohio St. 336, 103 N.E. 897 (1913)).

{¶ 27}   In the case before us, Medlin complains of water line damage to his master bathroom addition. By applying Section 1:06-2(f)'s plain terms, the result is straightforward; Medlin is responsible for "any and all costs of maintenance and repairs" to his existing master bathroom addition.

**{¶ 28}** CIC and Medlin do not directly address the language of subsection 2(f) in their brief. Rather, CIC and Medlin contend that Section 1:06 "simply addresses how to receive approval for additions, the process of constructing an addition and the maintenance and repair of the addition *during the construction process*." Brief, p. 13 (Emphasis added). But there is no language in subsection 2(f), or Section 1:06 as a whole, that limits a tenant's responsibility to maintain and repair the addition to the duration of the construction process. We reject CIC's invitation to read into the Code the limitation proposed. We are bound by the language contained within the four corners of the Code. *St. Mary's v Auglaize Cnty. Bd. Of Commrs.,* 115 Ohio St. 3d 387, 390, 875 N.E.2d 561 (2007) ("Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract."). The plain language of the Code mandates that Medlin pay "any and all costs" to maintain and repair his addition.

**{¶ 29}** CIC also contends that two Greenmont property managers' depositions advance its interpretation of the Code that Greenmont is responsible for the damage to Medlin's addition. Parol evidence, however, cannot be considered to create ambiguity when there is no ambiguity on the face of the contract. *Shifrin,* 64 Ohio St. 3d at 638. And it is well-established that a contract "does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto." *Foster Wheeler Enviresponse, supra*, at 362 (quoting *Ohio Crane Co v. Hicks*, 110 Ohio St. 168,172, 143 N.E. 388 (1924)). Because the Code is unambiguous, the depositions of Greenmont's property managers cannot be considered in interpreting the Code.

**{¶ 30}** CIC's Second Assignment of Error is overruled.

### V. Conclusion

**{¶ 31}** Both of CIC and Medlin's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.


Copies mailed to:

Matthew M. Schmidt
Michael B. Miller
James G. Kordik
Hon. Mary K. Huffman