[Cite as *Multibank 2009-1 CML-ADC Venture, L.L.C. v. S. Bass Island Resort, Ltd.*, 2017-Ohio-344.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Multibank 2009-1 CML-ADC
Venture, LLC

        Appellee

v.

South Bass Island Resort, Ltd., et al.

        Defendants

[John C. Tomberlin—Appellant]

Court of Appeals No. E-15-061

Trial Court No. 2008-CV-0749

**DECISION AND JUDGMENT**

Decided:  January 27, 2017

* * * * *

Martha S. Sullivan, Stephanie E. Niehaus and F. Maximilian
Czernin, for appellee.

Geoffrey L. Oglesby, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Dr. John C. Tomberlin, appeals the judgment of the Erie County

Court of Common Pleas, following a bench trial, which found that appellant personally

guaranteed a loan from the Columbian Bank and Trust Company ("Columbian Bank") to

South Bass Island Resort, Ltd. ("SBIR"), and awarded judgment to appellee, Multibank 2009-1 CML-ADC Venture, LLC ("Multibank")—Columbian Bank's successor in interest—in the amount of $20,576,899.91 plus ongoing interest, taxes, assessments, insurance, attorney fees, and costs. For the reasons that follow, we affirm.

### I. Facts and Procedural Background

{¶ 2} Many of the underlying facts are undisputed. At the end of May 2006, Columbian Bank offered to loan up to $8.6 million to SBIR for a property development project. Included as one of the conditions of granting the loan contained in the loan commitment letter was that the loan "will be 100% joint and severally guaranteed by Cecil Weatherspoon; John C. Tomberlin; and 250 Centre, LTD."[1] Notably, this was the only loan being discussed by Columbian Bank and SBIR in June 2006.

{¶ 3} The timeframe to close the loan was very short, with an original target date of June 27, 2006. The timeframe was further cut shorter in an effort to close on June 15, 2006. On June 7, 2006, Guy Humphrey, the attorney for Columbian Bank,[2] sent several draft documents, including a draft of an "Unconditional Cognovit Guaranty" for appellant, to SBIR's attorney, Jeffrey Rengel. The draft had blanks for the date of the guaranty and the date of the corresponding loan agreement. Rengel purportedly amended the "Unconditional Cognovit Guaranty" to change the location of execution, and sent it to

---

[1] Cecil Weatherspoon was the principle of both SBIR and 250 Centre Ltd.

[2] Guy Humphrey is now a United States Bankruptcy Judge for the Southern District of Ohio. Thus, we will refer to him throughout as "Judge Humphrey."

2.

appellant, who was in Alabama. As the closing date approached, and having not yet received the "Unconditional Cognovit Guaranty," on June 12, 2006, Judge Humphrey sent a second "Cognovit Unconditional Guaranty" to Rengel. The second guaranty listed June 14, 2006, as the date of execution of both the guaranty and the corresponding loan agreement.

{¶ 4} On June 15, 2006, Judge Humphrey emailed Rengel and stated that he had reviewed everything for the closing and was just waiting to receive a few more documents before the loan could be disbursed. Included in Judge Humphrey's review was the original draft of appellant's "Unconditional Cognovit Guaranty." Appellant had signed the draft, and his signature was notarized on June 8, 2006. Furthermore, June "8th," 2006, was handwritten in the blanks for the dates of the guaranty and the corresponding loan agreement. As for the additional documents that Judge Humphrey was waiting on, one of them was a U.S. "Patriot Act form" for appellant. The completed Patriot Act form and a copy of appellant's driver's license were received later that day, and the funds were disbursed by Columbian. The HUD Settlement Statement indicates that as part of the disbursement, $350,000 was paid to appellant.

{¶ 5} Relevant here, the details of the loan agreement itself are that it was to be a loan of up to $8.6 million, which was to be made in multiple advances as the property was developed. The loan agreement was dated June 14, 2006, and was for an 18-month term, with a maturity date of December 15, 2007. In addition, the loan agreement provided that

3.

The payment and performance of all of the Obligations shall also be secured and/or guaranteed by (i) the joint and several Cognovit Unconditional Guaranty (the "Guarantees") of Cecil Weatherspoon, John C. Tomberlin, and 250 Centre, Ltd. (the "Guarantors") of even date herewith to be executed and delivered at Closing by the Guarantors for the benefit of Lender * * *.

{¶ 6} It is undisputed that SBIR defaulted on the terms of the loan agreement, and as of the date of the trial, no payments had been made on the loan.

{¶ 7} On August 13, 2008, Columbian filed its complaint against SBIR, Cecil Weatherspoon, 250 Centre, Ltd., and appellant (the "defendants"). On March 26, 2009, the defendants filed their answer and asserted two counterclaims, one for fraud and one for breach of contract, based on Columbian's alleged misrepresentations regarding the disbursement of the funds, and its alleged failure to disburse the entire $8.6 million.

{¶ 8} After extensive litigation, the parties filed cross-motions for summary judgment. Weatherspoon, 250 Centre, Ltd., and appellant moved for partial summary judgment on appellee's claims, on the basis that the guaranties were unenforceable as a matter of law. Appellee, in turn, moved for summary judgment on its claims against all the defendants, as well as for summary judgment on the defendants' counterclaims.

{¶ 9} On November 16, 2011, the trial court entered its judgment denying Weatherspoon's, 250 Centre, Ltd.'s, and appellant's motion for summary judgment on appellee's claims. Likewise, the trial court granted appellee's motion for summary

4.

judgment on its claims against SBIR, Weatherspoon, and 250 Centre Ltd.  Thus, the court entered judgment against SBIR, Weatherspoon, and 250 Centre Ltd. in the principle amount of $7,849,093.30, plus interest, taxes, assessments and insurance, and costs.  The court also granted summary judgment in favor of appellee on the defendants' counterclaims, and dismissed those counterclaims with prejudice.  As to appellant, the trial court ruled that genuine issues of material fact precluded summary judgment on appellee's claims against him.  Specifically, the court identified the issues as "whether there were two loans or one; the respective intent of the parties; and the details of the content of the Tomberlin Guaranty."  The court ordered that the remaining issues related to appellant's guaranty would be set for a bench trial.

{¶ 10} After further litigation and numerous delays and continuances, the matter finally came before the court for a two-day bench trial held on March 18 and 19, 2014.  At the trial, appellee called as its only two witnesses, Judge Humphrey, by a videotaped deposition, and Michael Yaffe, a senior vice president of one of appellee's subsidiaries.  Appellant rested without calling any witnesses or submitting any evidence.

{¶ 11} Following the trial, on September 2, 2015, the court entered its judgment against appellant, finding by a preponderance of the evidence that appellant did guaranty the loan between Columbian Bank and SBIR.  The court awarded appellee $20,576,899.91 plus ongoing interest, taxes, assessments, insurance, attorney fees, and costs.

5.

## II. Assignments of Error

{¶ 12} Appellant has timely appealed the trial court's September 2, 2015, and November 16, 2011 judgment entries, and now asserts three assignments of error for our review:

I. The terms of a jury waiver has to be consistent with that which is waived, a trial court errs by granting plaintiff's Motion to Strike a Jury Demand when the document waiving the jury trial and the thing that was waived is at issue.

II. The verdict was against the manifest weight of the evidence and the evidence was insufficient as a matter of law. The verdict was contrary to law.

III. The trial court erred by granting summary judgment to the appellee against the appellants when there was a genuine issue of material fact as it related to the failed bank's breach of contract and other failures.

## III. Analysis

## A. Jury Demand

{¶ 13} In his first assignment of error, appellant challenges the trial court's decision on June 21, 2013, to grant appellee's motion to strike appellant's jury demand. The trial court granted the motion for the reason that appellant waived his right to a jury trial. Specifically, section No. 17 of the "Cognovit Unconditional Guaranty" signed by appellant states, "The Guarantor hereby irrevocably waives all right to trial by jury in any

6.

action, proceeding or counterclaim arising out of or relating to any of the loan documents."

{¶ 14} In his assignment of error, appellant argues that at the time he signed the guaranty there were no loan documents in existence, and that the waiver could only apply to an action based on a loan that was made on June 8, 2006, not the one at issue made on June 14, 2006. We disagree.

{¶ 15} "Ohio courts have held contractual jury-waivers, in which the parties agree not to ask for a jury trial, are enforceable where the terms of the waiver are clear and unambiguous." *MidAm Bank v. Dolin*, 6th Dist. Lucas No. L-04-1033, 2005-Ohio-3353, ¶ 123. Here, appellant waived his right to a jury trial "in any action * * * arising out of or relating to any of the loan documents." While appellant asserts that there were no loan documents in existence at the time the waiver was executed, the record through summary judgment indicates that the documents were created contemporaneously. Furthermore, although the ultimate issue is whether the guaranty applies to the June 14, 2006 loan, it is beyond dispute that appellant's liability rises and falls on the guaranty; the same guaranty in which he waived his right to a jury trial. Therefore, we hold that the trial court did not err in striking appellant's jury demand and proceeding to hold a bench trial.

{¶ 16} Accordingly, appellant's first assignment of error is not well-taken.

## B. Manifest Weight and Insufficiency

{¶ 17} In his second assignment of error, appellant challenges the trial court's judgment that he is liable under the June 8, 2006 guaranty as being against the manifest weight of the evidence, based on insufficient evidence, and contrary to law.

{¶ 18} An appellate court reviews judgments from the trial court following a bench trial under the manifest weight of the evidence standard. *Terry v. Kellstone, Inc.*, 6th Dist. Erie No. E-12-061, 2013-Ohio-4419, ¶ 12. The manifest weight standard is the same in a civil case as in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. Thus, "[t]he [reviewing] court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Id.* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

{¶ 19} In this case, it is undisputed that appellant signed the June 8, 2006 guaranty, and that his signature was not the result of fraud or duress. Thus, the sole issue, as recognized by the trial court, is whether through the June 8, 2006 guaranty appellant guaranteed the loan from Columbian Bank to SBIR.

8.

{¶ 20} In support of his argument, appellant asserts five sub-assignments of error:

1. A guarantor, is entitled to strict construction of his undertaking and cannot be held liable beyond the strict terms of his contract. A condition precedent cannot be found in reverse to reform a contract or change the terms.

2. Grounds for reformation of a contract are fraud and mutual mistake, a future event will not justify reformation. The trial court never made a finding that there was fraud, mutual mistake or mistake (sic) and as such the court could not find that the alleged guarantor guaranteed the loan based on reformation. Even if there was reformation the evidence was insufficient because at best the court found that the plaintiff proved their case by a preponderance of the evidence when the standard for reformation is clear and convincing.

3. Columbian Bank knew about the June 8th, 2006 guaranty prior to the loan being disbursed and did nothing by way of objecting.

4. Failure to affirmatively state that you are not going to guaranty a loan is not evidence that you will when you haven't guaranteed a loan.

5. Columbian Bank and Weatherspoon's commitment letter never requested a "Cognovit Unconditional Guarantee" but instead indicated that they wanted a "100% joint and several guaranty."

**{¶ 21}** Appellant's arguments can be summarized as follows. Appellant signed a guaranty that guaranteed a loan between Columbian Bank and SBIR to be executed on June 8, 2006. It is undisputed that the loan between Columbian Bank and SBIR was dated June 14, 2006, not June 8, 2006. Therefore, under the clear and unambiguous terms of the guaranty, appellant cannot be held to have guaranteed the loan at issue.

**{¶ 22}** "When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract." *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37. "In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* "'As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.'" *Id.*, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

**{¶ 23}** Appellant's conclusion relies on viewing the guaranty in isolation. However, "a writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997), citing *Legler v. United States Fid. & Guar. Co.*, 88

10.

Ohio St. 336, 103 N.E. 897 (1913). Here, when viewing the guaranty in conjunction with the loan commitment letter and the note, it is at least ambiguous whether appellant's guaranty is exclusively limited to a loan dated June 8, 2006. Therefore, we turn to extrinsic evidence to determine the parties' intent. *See Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987) ("A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning.").

{¶ 24} In the trial to determine the parties' intent, appellee presented evidence in the form of the loan commitment letter and note, both of which required as a condition precedent that appellant guarantee the loan. Further, appellee presented Judge Humphrey's testimony and email correspondence with SBIR's attorney, which contemplated that there was ever only one loan and that appellant was guaranteeing the loan. In addition, appellee presented evidence indicating that appellant, by his actions, intended to guarantee the loan: namely, that appellant signed the "Unconditional Cognovit Guaranty" before the loan closing, and signed the U.S. Patriot Act form the day after the loan closing. Finally, appellee presented the HUD Settlement Statement, which listed that appellant financially benefited from the loan by receiving $350,000 of the loan proceeds. Appellant, in contrast, did not present any evidence demonstrating that he did not intend to guarantee the June 14, 2006 loan. Therefore, we hold that the trial court's

11.

conclusion that appellant intended to guarantee the June 14, 2006 loan from Columbian Bank to SBIR is not against the manifest weight of the evidence.

{¶ 25} Advocating against this result, appellant, in his first sub-assignment of error, contends that the court misconstrued the law on condition precedent, and ignored the fact that Columbian Bank could have waived the requirement that he guarantee the loan. Appellant appears to argue that appellee did not present any testimony as to Columbian Bank's intent regarding the ineffective guaranty, and therefore has not shown that Columbian Bank did not waive the requirement of having the guaranty. We find appellant's argument to be without merit. In this case, appellee was obligated to prove that the parties intended that appellant would guarantee the loan. Appellee accomplished this by submitting, inter alia, the loan commitment letter and the note, both of which required that appellant guarantee the loan. Appellee was not obligated, however, to prove the inverse of appellant's theory that Columbian Bank waived the guaranty as a condition precedent. Therefore, appellant's first sub-assignment of error is not well-taken.

{¶ 26} In his second sub-assignment of error, appellant argues that the trial court erred in reforming the contract because there was no evidence of fraud or mutual mistake. However, the trial court did not reform the contract in this case, but instead interpreted an ambiguous provision. *See Gooslin v. B-Affordable Tree Serv.*, 6th Dist. Sandusky No. S-10-045, 2011-Ohio-4048, ¶ 19 ("[I]f the contract was ambiguous we could simply interpret the contract to comport with the parties' intent. It is precisely because the

12.

contract is unambiguous that reformation is appropriate and necessary.").  Therefore, appellant's second sub-assignment of error is not well-taken.

{¶ 27} In his third, fourth, and fifth sub-assignments of error, appellant argues that the evidence demonstrates that he did not intend to guarantee the June 14, 2006 loan. Specifically, in his third sub-assignment of error, appellant points to the fact that the guaranty is for a loan dated June 8, 2006, which he claims "is direct evidence Tomberlin *isn't guaranteeing a loan of June 14th, 2006*." (Emphasis sic.)  Appellant also notes that he did not sign the second guaranty that was for the loan dated June 14, 2006.  Likewise, in his fourth sub-assignment of error, appellant argues that his failure to affirmatively state that he *was not* going to guarantee the loan is not evidence that he *was* going to guarantee the loan where he did not sign the June 14, 2006 guaranty.  Finally, in his fifth sub-assignment of error, appellant engages in a discussion of the differences between a "suretyship" and a "guaranty."  Appellant then argues that the loan commitment letter sought a "suretyship" relationship, yet appellant executed a guaranty.  Appellant claims that discrepancy may explain why Columbian Bank failed to act when it received his ineffective June 8, 2006 "Unconditional Cognovit Guaranty."  Furthermore, one could infer from the bank's inaction that it did not intend that appellant would guarantee the June 14, 2006 loan.

{¶ 28} We find appellant's arguments to be without merit.  While appellant contends that this evidence demonstrates his lack of intent to guarantee the loan, the trial court viewed all of the evidence and reached the opposite conclusion.  As discussed

13.

above, the trial court's decision is not against the manifest weight of the evidence. Therefore, appellant's third, fourth, and fifth sub-assignments of error are not well-taken.

{¶ 29} Accordingly, appellant's second assignment of error is not well-taken.

## C. Summary Judgment

{¶ 30} In his third assignment of error, appellant argues that the trial court erred in granting summary judgment to appellee on the defendants' claims of fraud and breach of contract stemming from Columbian Bank's failure to disburse the entire $8.6 million loan amount.

{¶ 31} We review the grant of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 32} In particular, appellant contends that a genuine issue of material fact exists regarding whether Columbian Bank had the financial ability to loan the remaining amount due under the loan, or whether there were "financial shenanigans" with Columbian Bank being desperate to make paper loans yet actually lend as little money as

14.

possible, as stated in Rengel's affidavit in support of the defendants' motion for summary judgment. Notably, Rengel was also acting as trial counsel for the defendants at the time.

{¶ 33} In its November 16, 2011 judgment, the trial court determined that

[T]his entire issue [is] a non-issue. This was a "bridge loan" for an amount not to exceed $8.6 million. Not all of the $8.6 million was to be initially released. Additional draws were clearly contingent, pursuant to the Loan Agreement, on the occurrence of certain events triggered by progress on the project and Columbian's approval (i.e. contingent on work on the property being completed and inspected.)

In his brief, appellant summarily responds, "That is clearly not the meaning."

{¶ 34} Here, section (A)(1)(b) of the loan states, "The Loan shall be made in multiple advances as the Borrower completes the development of the Property. The initial advance shall be an amount equal to $_____, and the balance of the Loan shall be advanced as work on the Property is completed and inspected in accordance with procedures developed by the lender." It is undisputed that Columbian Bank disbursed $7,849,093.30, and that the only hard construction completed was installation of the water line. Furthermore, appellant does not contest the court's conclusion that the failure to disburse the additional funds had no impact on the failure of the project as there was "no real evidence that Defendants requested additional draws on loan proceeds which weren't granted." Therefore, even if there was an issue of fact regarding whether

15.

Columbian Bank sought to make paper loans, it is not a *material* issue of fact where the funds were disbursed in accordance with the loan agreement.

{¶ 35} Accordingly, appellant's third assignment of error is not well-taken.

### IV.  Conclusion

{¶ 36} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Erie County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
                  JUDGE

Arlene Singer, J.       

                _____
Thomas J. Osowik, J.      JUDGE
CONCUR.

                _____
                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.