[Cite as *IPS Elec. Servs., L.L.C. v. Univ. of Toledo*, 2015-Ohio-5556.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IPS ELECTRIC SERVICES, LLC

      Plaintiff

      v.

UNIVERSITY OF TOLEDO

      Defendant

Case No. 2013-00528

Judge Dale A. Crawford

DECISION

{¶1} Plaintiff, IPS Electric Services, LLC (IPS), brought this action against Defendant, University of Toledo (UT or the Owner), alleging breach of contract and unjust enrichment. The issues of liability and damages were not bifurcated and the case proceeded to trial on both issues.[1]

{¶2} On September 19, 2012, UT contracted with Henning Electrical Services, LLC (Henning), for the electrical trades work on a public improvement project known as the Medical Mall Phase II Project (project). The project consisted of an addition connecting two existing portions of UT hospital and a remodel of existing hospital space. At some point after the contract was signed, Henning changed its corporate name to IPS. On September 19, 2012, UT issued a Notice to Proceed providing that IPS had 148 consecutive calendar days, or until February 15, 2013, to fully complete its work on the project. However, when the Notice to Proceed was issued, UT, the project architect The Collaborative, Inc. (The Collaborative), and lead contractor A.Z. Schmina, Inc., (AZ) were proceeding on the project with a completion date of December 31, 2012. As a result, as soon as IPS began work on the project, IPS and the other contractors

were operating under an informal project schedule with a projected completion date of December 31, 2012.

**{¶3}** A number of delays impacted the project ultimately affecting the coordination of the work and the completion date of the project. Throughout the duration of the project, IPS corresponded with Christopher Levicki, project manager for UT, regarding its issues on the project.[2] On October 24, 2012, by way of a letter, IPS complained to UT regarding several issues that IPS claims were impacting its work on the project. In the letter, IPS claims that its work on the project has been accelerated by a schedule dated August 31, 2012, with a completion date of January 11, 2013, issued by AZ, and that it "will not be able to meet this accelerated schedule for the price quoted on bid day." Additionally, IPS states that air handling units ordered by UT are expected to arrive three or four weeks late; that there is a four week impact to IPS for AZ's failure to meet its October 18, 2012 date for having the Mall weather tight; that predecessor work such as stud walls that should have been completed by September 5, 2012, are not yet complete; that the ceiling grid in Area A should have been completed by September 12, 2012, but did not start until October 23, 2012; and, that Areas B and C are not available for work as a result of "late demolition and patient traffic." IPS states that as a result, it will not be able to complete work on the project until March 12, 2013.

**{¶4}** On December 24, 2012, IPS corresponded with Levicki at UT and Brandon Andrzejczak at The Collaborative regarding issues it was having on the project. In the letter, IPS states that on August 27, 2012, AZ issued a project schedule with a completion date of January 2, 2013. IPS states that it "committed manpower and resources to meet the revised January completion date, which included additional costs to account for the recognized acceleration." IPS states that in early September 2012, AZ issued a "new" schedule with a completion date of January 2, 2013 representing 43 days of "schedule compression" to IPS. Additionally, IPS identifies several delays affecting its work on the project. Those delays include late delivery of air handling units; late dry-in for the Mall; and slow responses to requests for information delaying overhead duct work and installation of wall studs. IPS states that wall stud delays and late ceiling grid installation have impacted its work on the project causing delays of six

---

[1]The parties' February 3, 2015 and February 4, 2015 motions for leave to exceed the page limitation are GRANTED.

or seven weeks. Additionally, IPS complains of delays as a result of patient traffic corridors through the project site. As a result, IPS states that it will need additional funding to meet the completion date of February 14, 2013.

{¶5} On January 22, 2013, IPS sent correspondence to both Levicki and Andrzejczak regarding "impacts and claims" affecting the project. IPS estimates that labor costs "associated with schedule compression from 8/12/12 to 10/28/12 is $50,000" due to an accelerated project completion date of January 2, 2013. IPS states that the "cost associated with disruptions to our performance as we described in our earlier correspondence is $110,000, presuming a project completion date of March 15, 2013." Additionally, IPS states that the missed dry-in date and delays in moving the temporary patient corridors have impacted IPS in the amount of $20,000 in General Conditions.

{¶6} On February 21, 2013, IPS again sent correspondence to both Levicki and Andrzejczak containing "back-up information as a detailed justification to that January 22, 2013 letter." In the letter, IPS states that "there is an additional $20,000 of general conditions cost due to the extended duration of this project * * * as well as $23,340 in net margin and $30,443 in overhead * * *." Attached to the letter is a document entitled Addendum A which identifies five categories of delays that affected IPS's work on the project:

(1) Acceleration Area "A"--$50,000 for 778 man-hours for two additional people from September 9, 2012 to November 11, 2012, to meet the accelerated project completion date of December 31, 2012;

(2) Delays Area "B"--$46,296 for 720 man-hours for two additional people from November 4, 2012 to January 6, 2013, as a result of delayed access to the north portion of Area B, a two month delay in the demolition of existing corridors, a week-long project shut down for a healthcare related inspection (CMS inspection), and AZ's alleged failure to schedule two week look-ahead meetings from the beginning of the project;
(3) Delays Area "A"--$20,576 for 320 man-hours for two additional people from February 10, 2013 to March 10, 2013, as a result of schedule changes regarding patient corridor from stair #1, slab removal west end of mall, and removal of the temporary walkway on January 18th;

(4) Delay Area, Mall--$20,576 for 320 man-hours for one additional person from January 13, 2013 to March 10, 2013, as a result of missed milestone dates for overhead steel completion, slab removal throughout

---

²Each of the letters identified in the decision was admitted as Plaintiff's Exhibit D.

mall area, building enclosure, and removal of existing temporary enclosure;

(5) Pharmacy Delay, Area "C"--$22,569 for 351 man-hours for three additional people from February 17, 2013 through March 10, 2013 as a result of mall delays, delayed start date for stud framing, delayed MEP finishes start date, and delayed removal/relocation of the patient traffic corridors.

{¶7} IPS substantially completed its work on the project by April 1, 2013. On April 25, 2013, IPS submitted its "Certified Claim" to Levicki for the "cumulative impact of the University of Toledo and its agents for the work that IPS performed" on the project. In the letter, IPS states that the Lead Contractor failed to engage a Schedule Manager pursuant to Article 4.2.3 of the contract documents. IPS notes that a schedule was not agreed upon until January 2013, and that as a result of the problems with the project schedule, IPS incurred delays and extra costs. Additionally, IPS identified three areas of cost impact as a result of the delays on the project:

(1) $50,000 claim for schedule compression as "documented in our February 21, 2013 letter, the areas where work was affected occurred in Area A between September 9, 2012 and November 11, 2012";

(2) $210,000 for disruptions of performance as "documented in our February 21, 2013 letter, the areas where work was affected occurred in Areas A, B, C, (Pharmacy) and the Mall for the periods of time noted in the Addendum to that letter. Since the date of the letter, there has been an additional identifiable damage totally an approximate $100,000";

(3) $20,000 for additional General Conditions as documented in "letters of notice to the University of Toledo as Project Owner on October 24, 2012, December 24, 2012, January 22, 2013 and February 21, 2013 and in this certified claims letter. There is an additional claim for General Conditions because we are now substantially complete and can now fully quantify the GCs. The total amount of General Conditions owed is $70,898.29."

{¶8} At trial, IPS asserted claims of breach of contract and unjust enrichment. IPS argues that it is entitled to $473,455 in addition to prejudgment interest as a result of schedule acceleration, delay, and disruption throughout the project. UT argues that IPS failed to timely notify, substantiate, and certify its claims, thus waiving its claims and failing to exhaust its administrative remedies. Waiver and failure to exhaust administrative remedies are affirmative defenses, upon which UT bears the burden of

proof. *Cleveland Constr., Inc. v. Kent State Univ.*, 10th Dist. Franklin No. 09AP-822, 2010-Ohio-2906, ¶ 48.

{¶9} There is no dispute that a written contract governs the relationship between the parties. Accordingly, IPS's claim for unjust enrichment is dismissed. *Cent. Allied Ents., Inc., v. Adjutant General's Dept.*, 10th Dist. Franklin No. 10AP-701, 2011-Ohio-4920, ¶ 39.

{¶10} Contract interpretation is a matter of law for the court. *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38. When interpreting a contract, a court's principal objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. In determining the parties' intent, a court must read the contract as a whole and give effect, if possible, to every part of the contract. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361-362 (1997). "[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978).

{¶11} "[W]hen a contract has an express provision governing a dispute, that provision will be applied; the court will not rewrite the contract to achieve a more equitable result." *Dugan & Meyers Constr. Co. v. Ohio Dept. of Admin. Servs.*, 113 Ohio St.3d 226, 2007-Ohio-1687, ¶ 39; *see also Cleveland Constr., Inc., supra*.

{¶12} Article 8 of the General Conditions entitled Dispute Resolution details the procedure for submitting a claim, in part as follows:

{¶13} "**8.1 Initiation of a Claim**

{¶14} "**8.1.1** Every claim shall accrue upon the date of occurrence of the event giving rise to the claim.

{¶15} "**8.1.2** Except as provided under paragraph 2.15, the Contractor shall initiate every claim by giving written notice of the claim to the A/E and the Contracting Authority within 10 days after occurrence of the event giving rise to the claim[.]

{¶16} " * * *.

{¶17} "**8.1.4** The Contractor's failure to initiate a claim as and when required under this paragraph 8.1 shall constitute the Contractor's irrevocable waiver of the claim.

{¶18} "**8.2 Substantiation of Claims**

{¶19} "**8.2.1** Within 30 days after the initiation of a Claim, the Contractor shall submit 4 copies of all information and statements required to substantiate a claim as provided in this Article 8 and all other information which the Contractor believes substantiates the claim. * * *.

{¶20} "* * *.

{¶21} "**8.2.4** The Contractor's failure to comply with the requirements of this paragraph 8.2 shall constitute an irrevocable waiver of any related claim.

{¶22} "* * *.

{¶23} "**8.5 Certification of the Claim**

{¶24} "**8.5.1** The Contractor shall certify each claim within 30 days after initiating the claim under paragraph 8.1 or before Contract Completion, whichever is earlier, by providing the notarized certification specified in subparagraph 8.5.1.1, signed and dated by the Contractor:

{¶25} "**8.5.1.1** 'The undersigned Contractor certifies that the claim is made in good faith; that the supporting data is accurate and complete to the best of the Contractor's knowledge and belief; that the amount requested is fair, reasonable, and necessary adjustment for which the Contractor believes the State is liable; and that the undersigned is duly authorized to certify the claim on behalf of the Contractor.'

{¶26} " * * *.

{¶27} "**8.5.3** The Contractor's failure to comply with the requirements of this paragraph 8.5 shall constitute an irrevocable waiver of any related claim."

{¶28} IPS argues that "[o]nly after final completion might IPS know the true nature of damages, whether its earlier notices resulted in the University mitigating or exacerbating damages, or whether individual delays or impacts compounded with others. Only at the end of the Project, after the University executed its bulletins in May and June, could IPS know that the University failed to take remedial measures, and then calculate IPS's total impact damages[.]" IPS's post-trial brief, pgs. 13-14. However, Article 8.1.1 and 8.1.2 clearly and unambiguously provide that IPS shall initiate a claim by providing written notice of a claim *within 10 days after the occurrence*

*of the event giving rise to the claim*, rather than when a contractor is able to precisely calculate its damages at the conclusion of the project. *See Cleveland Constr., Inc., supra*; *Stanley Miller Constr. Co. v. Ohio Sch. Facilities Commission*, 10th Dist. Franklin Nos. 10AP-298, 10AP-299, 10AP-432, 10AP-433, 2010-Ohio-6397. Additionally, after initiation of a claim, pursuant to Article 8.2 and 8.5, a contractor shall substantiate and certify its claim within 30 days after initiation of a claim.

{¶29} Upon review of the evidence, the Court finds that IPS failed to timely initiate its claims within 10 days after the occurrence of the events giving rise to the claims. IPS's April 25, 2013 Certified Claim sets forth three separate claims for which it seeks to recover damages for breach of contract. First, IPS claims $50,000 in schedule compression that affected its work in Area A between September 9, 2012 and November 11, 2012. Second, IPS claims $210,000 for disruptions of performance that affected its work in Areas A, B, C (Pharmacy) and the Mall for the time periods outlined in Addendum A to its February 21, 2013 letter. The time periods identified in the Addendum are as follows: Area A – February 10, 2013 to March 10, 2013; Area B – November 4, 2012 to January 6, 2013; Area C – February 17, 2013 to March 10, 2013; and the Mall – January 13, 2013 through March 10, 2013. Third, IPS claims $20,000 for additional General Conditions as documented in the letters dated October 24, 2012, December 24, 2012, January 22, 2013, and February 21, 2013, and April 25, 2013.

{¶30} There is no doubt that the April 25, 2013 Certified Claim letter cannot form the basis upon which IPS initiated its claims inasmuch as such a letter was not submitted within 10 days after the occurrence of the events giving rise to the claims as outlined in IPS's own Certified Claim letter. All of the events that give rise to the claims identified in the Certified Claim letter occurred at the latest on or before March 10, 2013. IPS substantially completed its work on the project by April 1, 2013 but did not submit written notice of a claim until April 25, 2013 when it submitted its Certified Claim. Accordingly, the Court finds that IPS did not timely initiate its claims pursuant to Article 8.1.1 and 8.1.2.

{¶31} Even if the Court determined that IPS timely initiated its claims as outlined in the October 24, 2012, December 24, 2012, January 22, 2013, and February 21, 2013 letters, IPS did not substantiate or certify its claims within 30 days after initiation of a claim as required by Article 8.2. and 8.5. Regardless of which letter forms the basis for initiation of a claim, the Court can only conclude that the April 25, 2013 Certified Claim

letter was submitted more than 30 days after initiation of a claim. Additionally, the October 24, 2012, December 24, 2012, January 22, 2013, and February 21, 2013 letters do not meet the requirements outlined in Article 8.2.2 for substantiation of a claim or the requirements of Article 8.5.1 for certification of a claim.[3] As stated in the General Conditions, failure to comply with the requirements of Article 8 shall constitute an irrevocable waiver of any related claim.

{¶32} IPS argues that UT repeatedly communicated that it would not entertain IPS's claims and that IPS is therefore excused from pursuing administrative remedies inasmuch as doing so would be futile or a vain act. R.C. 153.12(B) provides in relevant part: "If a dispute arises between the state and a contractor concerning the terms of a public improvement contract let by the state or concerning a breach of the contract, and after the administrative remedies provided for in such a contract * * * are exhausted, the contractor may bring an action to the court of claims in accordance with Chapter 2743 of the Revised Code." "R.C. 153.12(B) presents a rare instance where a statute requires a plaintiff to exhaust its administrative remedies before bringing suit. Unlike the judicially-created exhaustion of administrative remedies doctrine, R.C. 153.12(B) does not include any exceptions." *Cleveland Constr., Inc., supra*, at ¶ 37. Consequently, IPS cannot avoid the procedures identified in Article 8 "due to a high likelihood of an adverse outcome." *Id.* at ¶ 42.

{¶33} Finally, IPS argues that UT waived strict compliance with the dispute resolution procedure outlined in Article 8. However, the evidence establishes that UT insisted on strict compliance with the notice and substantiation provisions identified in Article 8. Defendant's Exhibit 24.

---

[3]"**8.2.2** The Contractor shall substantiate all of its claims by providing the following minimum information:

"**8.2.2.1** A narrative of the circumstances, which gave rise to the claim, including, without limitation, the start date of the event or events and the actual, or anticipated finish date;

"**8.2.2.2** Detailed identification of the Work (e.g., activity codes from the Construction Progress Schedule) affected by the event giving rise to the claim;

"**8.2.2.3** Copies of the Lead Contractor's daily log (subparagraph 4.2.9) for each day of impact;

"**8.2.2.4** Copies of relevant correspondence and other information regarding or supporting Contractor entitlement.

"**8.2.2.5** Copies of the Contractor's most recent income statement, including segregated general and administrative expenses for the most recent reporting period, and for the period of the Contact, if available, and similar information for any Subcontractor claim included;

"**8.2.2.6** The notarized certification described under subparagraph 8.5.1.1;

"**8.2.3** The Contractor shall submit a fully executed Contractor Claim Submission Checklist, signifying compliance with all of the requirements listed in subparagraph 8.2.2 with each copy of the claim.

"**8.2.4** The Contractor's failure to comply with the requirements of this paragraph 8.2 shall

{¶34} While IPS has proved that some of UT's actions, as outlined in its April 25, 2013 Certified Claim letter constituted a breach of its contract with UT, UT has proved by a preponderance of the evidence that IPS failed to comply with the dispute resolution procedure set forth in the contract. IPS's January 16, 2015 motion for leave to amend the pleadings to conform to the evidence is DENIED as moot.[4] Accordingly, the Court shall render judgment in favor of UT.

_____
DALE A. CRAWFORD
Judge

---

constitute an irrevocable waiver of any related claim."
[4] The Court has difficulty with IPS stating that it can submit a Certified Claim specifying its damages and then seek additional monetary compensation for the same claims in the Court of Claims.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IPS ELECTRIC SERVICES, LLC

       Plaintiff

       v.

UNIVERSITY OF TOLEDO

       Defendant

Case No. 2013-00528

Judge Dale A. Crawford

## JUDGMENT ENTRY

{¶35} This case was tried to the Court on the issues of liability and damages. The Court has considered the evidence and for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of Defendant. Plaintiff's claim of unjust enrichment is dismissed. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
DALE A. CRAWFORD
Judge

cc:

David M. Scott
Luther L. Liggett Jr.
10 West Broad Street, #1320
Columbus, Ohio 43215

James E. Rook
Richard J. Silk Jr.
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed March 9, 2015**
**Sent To S.C. Reporter 12/31/15**